IN THE MATTER OF NATASHA EVANS, JUVENILE

No. 8514DC1020

(Filed 17 June 1986)

1. **Parent and Child §§ 1.5, 2.3— removal of child from parent's care—termination of parental rights—quantum of proof of neglect and dependency**

   There is a substantive difference between the quantum of adequate proof of neglect and dependency for purposes of termination of parental rights and for purposes of removal of the child from the parent's care.

2. **Parent and Child § 2.3— inability to provide secure living arrangements for child—removal from mother's custody proper**

   There was enough clear and convincing evidence that a child was exposed to a substantial risk of physical injury because of her mother's inability to maintain secure living arrangements for her so that the Department of Social Services could properly remove her from her mother's custody until such accommodations could be provided.

3. **Parent and Child § 2.3— conditions for returning child to mother's custody—impropriety**

   The district court's order removing a child from her mother's custody was improper in conditioning custody on the mother's ability to provide a separate bed for her seven-year-old daughter, in denying custody on the ground that the one-room living arrangement which the mother had available for herself, her 16-year-old son, and her seven-year-old daughter was not "suitable," and in compelling the mother to submit to psychiatric or psychological evaluation or treatment separate and apart from her participation in her daughter's treatment.

APPEAL by respondent from *Pearson, Judge*. Order entered 10 June 1985 in District Court, DURHAM County. Heard in the Court of Appeals 12 February 1986.

*Thomas J. Andrews for respondent-appellant.*

*No brief filed for petitioner-appellee, Durham County Department of Social Services.*

*No brief filed for Guardian-ad-Litem.*

BECTON, Judge.

Respondent Helen Evans seeks the reversal of a district court order finding her seven-year-old daughter, Natasha Evans, to be dependent and neglected within the meaning of N.C. Gen. Stat. Sec. 7A-517 (1981), removing the child from the mother's

care and placing legal and physical custody of Natasha in the Durham County Department of Social Services (DSS). We vacate and remand.

I

On 12 July 1984, the DSS filed a petition alleging that Natasha was dependent and neglected and obtained a non-secure custody order. On 26 February 1985, a full hearing on the merits was held. The district court made findings of fact which are outlined below.

On 11 July 1984, Helen Evans went to the DSS seeking food and housing assistance for herself and Natasha. DSS personnel observed that Natasha was "dirty, her hair had not been combed for a while and [Helen] Evans was also observed to be in a similar unkempt condition." The DSS found Helen and Natasha Evans a place in a rooming house, but the mother and child returned to the DSS the next day. Helen Evans told the DSS that her AFDC check had been stolen and asked for assistance in finding another place to live. Helen Evans had requested housing assistance from the DSS on other occasions; the last time prior to 11 July 1984 was in February of 1984.

Helen Evans is now living with her sixteen-year-old son in a rooming house. According to the district court,

> [she] sees nothing inappropriate with her and her 16-yr. old son living in a single room. This is also the living arrangement which she has available for her child Natasha if the court grants her request to return her to her custody.

A psychologist, Dr. Shannon Van Wey, testified at this hearing about his evaluation of Helen Evans. The district court found that this evaluation "[did] not reveal any serious pathology although [the psychologist] has grave concerns about [Helen Evans'] lack of impulse control which is reflected in her history of instability and lack of responsibility." Helen Evans had missed and failed to re-schedule appointments with the psychologist in September and October of 1984.

The court found that although Helen Evans loves Natasha, she "is very limited in her ability to be a proper parent for her," and that she does not have a "suitable" place for Natasha to live.

Natasha had missed school from mid-April 1984 to the end of that school year, but now she is "thriving in foster care and doing well both socially and academically in school."

The district court concluded that Natasha is dependent and neglected as defined by G.S. Sec. 7A-517 and that it is in her best interest for her legal and physical custody to be placed with the DSS. The court also concluded that reasonable efforts would be made by the DSS to return Natasha to Helen Evans' custody providing Evans gets a permanent job, secures "suitable housing," including separate beds for herself and each of her two children, and participates in "any recommended treatment plan" prescribed by Dr. Harold T. Harris.

II

[1]  Helen Evans contends that the district court erred when it concluded that Natasha was dependent and neglected within the meaning of G.S. Sec. 7A-517 because there was insufficient evidence as a matter of law to support that conclusion. This is an unusual appeal in which this Court is being asked to pass upon the sufficiency of evidence to support findings of dependency and neglect at the removal, rather than at the termination, stage. Respondent makes a very forceful argument, citing the termination cases, that the evidence is so scanty in this case that it does not rise to the level necessary to support the conclusion of neglect and dependency. While we would be inclined to agree with respondent's position if this were a termination case, we believe that a different standard applies at the removal stage and that the *removal* was therefore proper.

N.C. Gen. Stat. Sec. 7A-517(3) authorizes the DSS to take a juvenile into immediate temporary custody if there are reasonable grounds to believe that the juvenile is abused, neglected, or dependent *and* that she would be injured or could not be taken into custody if it were first necessary to obtain a court order. A dependent juvenile is one whose parent, guardian, or custodian is unable to provide for her care or supervision. *See* G.S. Sec. 7A-517(13) (emphasis added). A neglected juvenile is one who, among other things, does not receive proper care, supervision, or discipline from her parent or who lives in an environment injurious to her welfare. *See* G.S. Sec. 7A-517(21).

When a juvenile is alleged to be neglected or dependent and is taken into temporary custody, the DSS must petition a court for secure or non-secure custody. An order for non-secure custody will be made only when there is a reasonable factual basis to believe that the matters alleged by the DSS in its petition for non-secure custody are true *and* that the juvenile is *exposed* to a substantial risk of physical injury because the parent has created the conditions likely to cause injury or has failed to provide, or is unable to provide adequate supervision or protection. *See* N.C. Gen. Stat. Sec. 7A-574(a) and (3) (1985 Cum. Supp.) (emphasis added).

The State then has the burden, at the adjudicatory hearing stage, to prove neglect and dependency by clear and convincing evidence. *See* N.C. Gen. Stat. Sec. 7A-635 (1981). Respondent points out that our courts have not found it difficult to give precise meaning to the statutory definition of a neglected child by analyzing in particular cases the factual circumstances before the court and weighing the compelling interests of the State with those of the parent and child. *In re Biggers*, 50 N.C. App. 332, 341, 274 S.E. 2d 236, 241 (1981).

All but one of the cases respondent cites in support of the contention that in this case the facts are too meager to support the findings of neglect and dependency, are termination cases. There is a substantive difference between the quantum of adequate proof of neglect and dependency for purposes of termination and for purposes of removal. The most significant difference is that while parental rights may not be terminated for threatened future harm, the DSS may obtain temporary custody of a child when there is a *risk of neglect* in the future. *See In re Phifer*, 67 N.C. App. 16, 26, 312 S.E. 2d 684, 689 (1984) (emphasis added).

[2]   Thus, the task at the temporary custody or removal stage is to determine whether the child is *exposed* to a substantial risk of physical injury because the parent is unable to provide adequate protection. We hold that there was enough clear and convincing evidence that Natasha was exposed to a substantial risk of physical injury because of her mother's inability to maintain secure living arrangements for her and that the DSS could properly remove her from her mother's custody until such accommodations could be provided.

[3] However, we disapprove of the district court's order in several respects, and remand for a new determination consistent with this opinion. First, to the extent that the court's order places the state's imprimatur on certain socio-economically based value judgments, it must be overruled. Courts cannot condition custody on a mother's ability to provide a separate bed for her seven-year-old daughter. Nor can a court say, without more, that the one-room living arrangement which Helen Evans had available for Natasha at the time of the hearing was not "suitable," and deny her custody on that ground.

We are also troubled by the district court's conclusion that "[Helen] Evans is in need of being psychiatrically evaluated," and its order that the DSS "shall arrange for Dr. Harold T. Harris to evaluate *both* respondent Helen Evans and Natasha Evans and *they* shall participate in any recommended treatment plan." (Emphasis added.) We have recently held that N.C. Gen. Stat. Sec. 7A-650 (b1) (Cum. Supp. 1985) does not authorize a court to order a parent of a juvenile who has been adjudicated as dependent or neglected to submit to medical, psychiatric, psychological or other assessment or treatment. *In re Badzinski*, 79 N.C. App. 250, 255, 339 S.E. 2d 80, 84 (1986). *Compare*, N.C. Gen. Stat. Sec. 7A-289.30(b)(1981) (In *termination* proceedings, the court may order an "examination" of a parent by a psychiatrist, psychologist, physician, agency or other expert.).

To the extent the order in this case compels Helen Evans to submit to psychiatric or psychological evaluation or treatment *separate and apart* from her "participation" in Natasha's treatment, the district court's order must be vacated, and Helen Evans' failure to submit to such evaluation or treatment cannot be used to deny her custody of Natasha.

The district court concluded that reasonable efforts would be made to return Natasha to her mother's custody, provided Helen Evans complied with the conditions of the court's order. It appears that at the time of the hearing in this matter, Helen Evans had secure housing and was living with her sixteen-year-old son. Since we have vacated the other conditions upon which the district court based its denial of custody to Helen Evans, we remand this cause to that court for a determination of whether custody of Natasha should now be restored to her mother.

Vacated in part and remanded.

Judges JOHNSON and MARTIN concur.