IN THE MATTER OF BRITTNY NICOLE HELMS

No. COA97-45

(Filed 21 October 1997)

### 1. Trial § 597 (NCI4th)— juvenile neglect—findings and conclusions distinguished

As a general rule, any determination requiring the exercise of judgment or application of legal principles is classified a conclusion of law, while any determination reached through logical reasoning from the evidentiary facts is classified a finding of fact. The determination of neglect in juvenile cases requires the application of the legal principles set forth in N.C.G.S. § 7A-517(21) and is therefore a conclusion of law. The determinations that DSS has made reasonable efforts to prevent the need for removal of the child from the parent and that it is in the best interest of the child to be in the custody of DSS are conclusions of law because they require an exercise of judgment.

**2. Infants or Minors § 120 (NCI4th)— juvenile neglect order—finding that child exposed to risk—supported by evidence**

Clear and convincing competent evidence supports a trial court's finding of fact in a juvenile neglect order that respondent had exposed her child to risk by allowing her extended contact ' with Strube and Helms, respondent's father and the putative father of the child, in that the record reveals that both were abusive to respondent, Strube used cocaine and has attempted to assault respondent sexually, and, in violation of DSS protection plans, respondent and the child lived with Strube and respondent continued to allow Helms extended and unsupervised contact with the child.

**3. Infants or Minors § 120 (NCI4th)— conclusion that juvenile neglected—findings—unstable living arrangements**

The trial court's conclusion of law that Brittny is a neglected juvenile was supported by findings of fact that Brittny was substantially at risk due to the instability of her living arrangements and that the environment in which respondent and Brittny lived was injurious in that it involved drugs, violence, and attempted sexual assault.

**4. Infants or Minors § 126 (NCI4th)— juvenile neglect order—conclusion of reasonable efforts by DSS—supported by findings**

The trial court's conclusion that DSS made reasonable efforts to prevent a child's removal from her home was supported by evidence, reflected in the findings, that DSS entered into four different protection plans with respondent which reflect an effort by DSS to stabilize the child's home environment and protect her from violent individuals and drugs and which also encouraged respondent to apply for food stamps, AFDC, and Medicaid.

**5. Infants or Minors § 128 (NCI4th)— juvenile neglect— child's best interest—DSS custody—conclusion supported by finding**

The trial court's conclusion that it was in a child's best interest to continue in the custody of DSS pending respondent-mother's compliance with reunification measures was supported by findings that the child lived in an environment injurious to her welfare and that respondent had failed to comply with DSS's efforts to prevent removal.

**6. Infants or Minors § 122 (NCI4th)— juvenile neglect order—reunification requirements—child's best interests—conclusion supported by findings**

There were sufficient findings in a juvenile neglect order to support the conclusion that reunification requirements are in the child's best interests where the finding that respondent moved several times during the four months she retained custody of Brittny supports the conclusion that it is in the child's best interest for respondent to provide a stable environment; the findings that respondent's father used cocaine and that respondent and the child tested positive for drugs support the conclusion that it is in the child's best interest for respondent to submit to drug testing and provide a drug-free environment for the child; the findings that respondent's father and the child's putative father have repeatedly abused respondent support the conclusion that it is in the child's best interest for respondent to cooperate with domestic violence and dependency counseling; and the findings that respondent continued to allow her father and the child's father access to Brittny despite their violent behavior, and the finding that Brittny may have been malnourished, support the conclusion that it is in Brittny's best interest for respondent to complete a parenting course.

Appeal by Respondent Crystal Strube from order dated 17 September 1996 by Judge William G. Hamby, Jr. in Cabarrus County District Court. Heard in the Court of Appeals 11 September 1997.

*Kathleen Marie Widelski, for Cabarrus County Department of Social Services, petitioner appellee.*

*Mary Beth Smith, for Crystal Strube, respondent appellant.*

*Amy Zacharias, Guardian ad Litem, Attorney Advocate.*

GREENE, Judge.

Crystal Strube (Respondent) appeals from an order adjudicating her daughter, Brittny Nicole Helms (Brittny), a neglected juvenile and granting continued custody to the Cabarrus County Department of Social Services (DSS).

Brittny was born 15 September 1994. DSS initially became involved upon receiving an unconfirmed report that a newborn girl had tested positive for cocaine. Respondent, an unemployed sixteen-

**IN RE HELMS**

[127 N.C. App. 505 (1997)]

year-old who did not attend school, denied any drug involvement, but revealed that her father, Johnny Strube (Strube), smoked crack cocaine while she was living with him during her pregnancy.

A protection plan was entered into between DSS and Respondent on 16 September 1994, the details of which are not in the record. A second protection plan was entered on 29 November 1994, requiring Respondent to: (1) provide a stable environment for Brittny; (2) stay at the home of Elizabeth Starnes, the putative paternal grandmother; (3) refrain from physical or verbal violence in front of Brittny; (4) refrain from exposing Brittny to cocaine; and (5) not take Brittny to Strube's home for extended periods.

On 2 January 1995, Respondent told DSS that Strube, her father, "was on probation for cocaine and that he goes into 'the bottom' to buy cocaine . . . [and] he had cut her; he had dragged her with a machete into a bedroom and tried to remove her clothes," but was interrupted when her stepbrother entered the room. Respondent also told DSS that the putative father, Terry Helms (Helms), had tried to run over her with a car. Respondent obtained a warrant against Helms due to his abuse, but subsequently dropped it. Based on Respondent's determination of the safest place for herself and Brittny, on 4 January 1995, a third protection plan was entered between Respondent and DSS. This plan required Brittny to live with Debra Hartsell (Hartsell), Respondent's mother, until the investigation was complete, with Respondent caring for Brittny in the Hartsell home during the day while Hartsell was at work. Respondent was also required to check on obtaining Aid to Families with Dependent Children (AFDC) and Medicaid. Finally, the plan allowed Respondent to continue to date Helms, but allowed Helms access to Brittny only at the Hartsell home. The social worker noted that when he saw Brittny on 4 January 1995, she was "happy . . . [and] laughing and smiling and . . . clean and appropriately dressed." Testimony revealed that Respondent and Brittny lived with Strube for brief periods of time during January 1995; Respondent and Brittny also stayed overnight with Helms at some points. On 23 January 1995, Respondent admitted that she had not abided by the protection plans, and that she was currently living with her cousin. At this time a fourth protection plan was entered between Respondent and DSS requiring Respondent to: (1) continue living at her cousin's; (2) supervise and meet the needs of Brittny; (3) take Brittny to medical appointments; (4) apply for AFDC and food stamps; and (5) notify DSS if she again changed addresses. The next day Respondent notified DSS that she

and Brittny were living with Chris Booth, one of Respondent's friends. Respondent also stated that she refused to apply for AFDC and food stamps. On 27 January 1995, DSS discovered that Respondent and Helms had rented an apartment which they planned to move into with Brittny. DSS took custody of Brittny later that afternoon.

At the hearing, the guardian ad litem report was received into evidence showing that "[Respondent] tested positive for cocaine prenatally, and at birth both [Respondent] and Brittny tested positive for cocaine." The guardian ad litem report also notes that "at birth Brittny was in the 25th percentile for growth, but had slipped to the 5th percentile by the time she was taken into custody by DSS. Given Brittny's weight gains in foster care, [the doctor assigned to the case] stated that the reason for the previous poor growth was 'probably malnutrition.' " At the close of DSS's evidence and at the close of all the evidence, Respondent moved to dismiss for failure to show that Brittny is a neglected juvenile; the motions were denied.

The trial court found Respondent "did not have stable living arrangements and moved several times since the infant's birth." The court further found Respondent had no apparent means of support; had failed to comply with DSS's protection plans; and had exposed Brittny to risk by allowing extended contact with Strube, Respondent's father, a cocaine user who has been abusive to Respondent, and with Helms, Brittny's putative father, who has also been abusive to Respondent. The trial court also incorporated the guardian ad litem report into its findings of fact. The court, however, noted that Respondent's "devotion to the infant is clear as is the willingness of her family to help and there is no physical evidence of neglect."

The trial court concluded that Brittny was neglected in that she lived in an environment injurious to her welfare, and that it is in Brittny's best interest to remain in the custody of DSS until Respondent secures the return of her child by compliance with the following requirements:

a. provide a stable, drug-free environment in which to live;

b. cooperate with counseling for domestic violence and dependency issues;

c. maintain one consistent residence for a minimum of three months;

d. submit to drug testing; any fees involved are waived;

e. complete a parenting course, demonstrating an ability to parent her child; any fees involved are waived.

The trial court further concluded that DSS had "made reasonable efforts to prevent the need for foster care." The trial court then ordered that Brittny remain in the custody of DSS.

The issues are whether: (I) there is clear and convincing evidence to support the trial court's findings of fact that Respondent has placed Brittny at risk by exposing her to Strube and Helms; and (II) the findings of fact support the conclusions of law that (A) Brittny is a neglected juvenile, (B) DSS has made reasonable efforts to prevent the need for removal, (C) it is in Brittny's best interest to remain in the custody of DSS,[1] and (D) the requirements for reunification of Respondent and Brittny are consistent with N.C. Gen. Stat. § 7A-650(b2).

[1] The trial court found both as facts and as conclusions of law that (i) Brittny is a neglected juvenile, (ii) DSS has made reasonable efforts to prevent removal, and (iii) it is in Brittny's best interest to remain in the custody of DSS. These determinations, however, are more properly designated conclusions of law and we treat them as such for the purposes of this appeal. *See In re Montgomery,* 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (limiting review of conclusions of law to whether they are supported by findings of fact). The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment, *see Plott v. Plott,* 313 N.C. 63, 74, 326 S.E.2d 863, 870 (1985), or the application of legal principles, *see Quick v. Quick,* 305 N.C. 446, 452, 290 S.E.2d 653, 657-58 (1982), is more properly classified a conclusion of law. Any determination reached through "logical reasoning from the evidentiary facts" is more properly classified a finding of fact. *Quick,* 305 N.C. at 452, 290 S.E.2d at 657-58 (quoting *Woodard v. Mordecai,* 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951)). The determination of neglect requires the application of the legal principles set forth in N.C. Gen. Stat. § 7A-517(21) and is therefore a conclusion of law. The reason-

---

1. Respondent also contends that the trial court erred in denying her motions to dismiss; however, because we hold that clear and convincing competent evidence supports the trial court's findings of fact, and the findings of fact support the conclusions of law, we also hold that the trial court properly denied the motions to dismiss.

able efforts and best interest determinations are conclusions of law because they require the exercise of judgment.

## I

**[2]** Allegations of neglect must be proven by clear and convincing evidence. N.C.G.S. § 7A-635 (1995). In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings. *See Montgomery*, 311 N.C. at 111, 316 S.E.2d at 253; *Matthews v. Prince*, 90 N.C. App. 541, 545, 369 S.E.2d 116, 117 (1988).

In this case, clear and convincing competent evidence supports the trial court's findings of fact that Respondent has exposed Brittny to risk by allowing her extended contact with Strube and Helms. The record reveals that both Strube and Helms were abusive to Respondent; in addition, Strube used cocaine and has attempted to assault Respondent sexually. The record also reveals that, in violation of DSS's protection plans, Respondent and Brittny lived with Strube during January, and Respondent continued to allow Helms extended and unsupervised contact with Brittny.

## II

Our review of a trial court's conclusions of law is limited to whether they are supported by the findings of fact. *Montgomery*, 311 N.C. at 111, 316 S.E.2d at 253.

## A

**[3]** A "neglected juvenile" is defined in part as one who "does not receive proper care, supervision, or discipline from the juvenile's parent . . . ; or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7A-517(21) (1995). This Court has additionally "required that there be some physical, mental, or emotional impairment of the juvenile *or a substantial risk of such impairment* as a consequence of the failure to provide 'proper care, supervision, or discipline' " in order to adjudicate a juvenile neglected. *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (listing cases holding that a substantial risk of impairment is sufficient to show neglect) (emphasis added). The inability to maintain secure living arrangements is relevant to a determination of whether there is a substantial risk of injury to the juvenile. *See In re Evans*, 81 N.C. App. 449, 452, 344 S.E.2d 325, 327 (1986) (noting the "substantive difference between the quantum of adequate proof of neglect . . . for pur-

poses of termination and for purposes of removal"); *In re Adcock*, 69 N.C. App. 222, 225-26, 316 S.E.2d 347, 348-49 (1984) (moving eight times within a year and a half is evidence of instability relevant to a neglect determination).

In this case, the findings of fact reveal that Brittny was substantially at risk due to the instability of her living arrangements, and Respondent and Brittny moved at least six times during the four months Respondent retained custody. Respondent also placed Brittny at substantial risk through repeated exposure to violent individuals, one of whom uses cocaine. Furthermore, the environment in which Respondent and Brittny lived was injurious in that it involved drugs, violence, and attempted sexual assault. The trial court's findings of fact therefore support the conclusion of law that Brittny is a neglected juvenile.

B

[4] An order authorizing DSS's continued custody of a neglected juvenile "shall include findings as to whether reasonable efforts have been made to prevent or eliminate the need for placement of the juvenile in custody." N.C.G.S. § 7A-577(h) (1995). At the time this action was commenced, 27 January 1995, our juvenile code did not define "reasonable efforts"[2] and neither did the federal law on which our state statute is based. *See* 42 U.S.C. § 671(a)(15) (Supp. 1997) (requiring states to make "reasonable efforts . . . to prevent or eliminate the need for removal" in order to receive federal funding for the state's foster care program). Because of this lack of definition, the district courts are given great discretion in determining what efforts are reasonable in each case and whether those efforts have been made by DSS. *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa App. 1997).[3] In this

---

2. The General Assembly has recently defined "reasonable efforts" as the "diligent use of preventive or reunification services by [DSS] when a juvenile's remaining at home . . . is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time." 1997 N.C. Sess. Laws ch. 390, § 3 (effective date 1 October 1997) (to be codified at N.C.G.S. § 7A-517(25a)). A "safe home" is one "in which the child is not at substantial risk of physical or emotional abuse or neglect." *Id.* (to be codified at N.C.G.S. § 7A-517 (25b)).

3. We do note that there exists a federal regulation setting forth a nonexclusive list of services which *may* satisfy the "reasonable efforts" requirement. 45 C.F.R. § 1357.15(e)(2) (1996) (*i.e.*, crisis counseling, individual and family counseling, services to unmarried parents, mental health counseling, drug and alcohol abuse counseling, homemaker services, day care, emergency shelters, vocational counseling, emergency caretaker, and "other services which the agency identifies as necessary and appropriate").

case, DSS entered into four different protection plans with Respondent regarding the care and protection of Brittny. These plans reflect an effort by DSS to stabilize Brittny's home environment and protect her from violent individuals and drugs. The plans also encouraged Respondent to apply for food stamps, AFDC, and Medicaid. This evidence, which is reflected in the findings of the trial court, supports the conclusion that DSS made reasonable efforts to prevent Brittny's removal from her home.

C

[5] A neglected juvenile may be placed in the custody of DSS when the court determines it to be in the best interest of the juvenile. N.C.G.S. § 7A-647(2)(c) (1995).

The findings of fact noted above in support of the conclusion of law that Brittny lived in an environment injurious to her welfare, combined with the finding that Respondent failed to comply with DSS's efforts to prevent removal, support the conclusion of law that it is in Brittny's best interest to continue in the custody of DSS pending Respondent's compliance with reunification measures.

D

[6] The trial court ordered Respondent to "provide a stable, drug-free environment," "cooperate with counseling for domestic violence," "submit to drug testing," and "complete a parenting course." This order was based on the conclusion of the trial court that these steps were in Brittny's best interest. This action by the trial court is specifically authorized by our statutes, N.C.G.S. § 7A-650(b2) (trial court may require counseling or other treatment "directed toward remediating or remedying behaviors or conditions that led to or contributed to . . . the court's decision to remove custody" where it determines such treatment is in the best interest of a neglected child), and Respondent does not argue otherwise.

Respondent does argue that there are insufficient findings to support the conclusion[4] that the reunification requirements are in Brittny's best interest. We disagree. In this case, the finding that Respondent moved several times during the four months she retained custody of Brittny supports the conclusion that it is in Brittny's best

---

4. The trial court classified its reunification requirements as both a finding of fact and a conclusion of law. Because this determination requires the application of legal principles pursuant to section 7A-650(b2), the determination is more properly classified a conclusion of law.

DEASON v. J. KING HARRISON CO.

[127 N.C. App. 514 (1997)]

interest for Respondent to provide a stable environment for Brittny. The findings that Strube, Respondent's father, used cocaine, and that both Respondent and Brittny tested positive for drugs, support the trial court's conclusion that it is in Brittny's best interest for Respondent to submit to drug testing and provide a drug-free environment for Brittny. The findings that both Strube and Helms have repeatedly abused the Respondent support the conclusion that it is in Brittny's best interest for Respondent to cooperate with domestic violence and dependency counseling. Finally, the findings that Respondent continued to allow Strube and Helms unrestricted access to Brittny despite their violent behavior, and that Brittny may have been malnourished, support the conclusion that it is in Brittny's best interest for Respondent to complete a parenting course in order to regain custody of Brittny.[5]

Affirmed.

Judges WYNN and MARTIN, Mark D., concur.

---

5. Respondent assigns error to each of the trial court's conditions for reunification; however, she does not argue before this Court that the trial court erred in ordering her to maintain a consistent residence for a minimum of three months. We do not address this portion of the assignment of error, as it has been abandoned. N.C. R. App. P. 28; *State v. Wilson*, 289 N.C. 531, 223 S.E.2d 311 (1976).