An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-848
NORTH CAROLINA COURT OF APPEALS

Filed:  21 January 2014

IN THE MATTER OF:
J.C., J.J., AND D.M.
    Minor Children

                                        Wake County
                                        Nos. 12 JA 320-22


Appeal by respondent from order entered 3 May 2013 by Judge Monica Bousman in Wake County District Court.  Heard in the Court of Appeals 10 December 2013.


> *Roger A. Askew for Wake County Department of Human Services, petitioner-appellee.*
>
> *Katherine Jones for guardian ad litem.*
>
> *Jeffrey L. Miller for respondent-appellant.*


McCULLOUGH, Judge.


Respondent-mother appeals from an order adjudicating her three children as neglected juveniles.  We affirm.

In March 2012 Wake County Human Services ("WCHS") received a report that respondent's two young children at that time, J.C. (hereinafter "Jay") and J.J. (hereinafter "Jon") were neglected and abused juveniles.  WCHS investigated the report and determined on 28 April 2012 that respondent and her two sons

were in need of services. Respondent gave birth to a third child, D.M. (hereinafter "Don"), on 16 June 2012. Two days later, WCHS received a report alleging Don was neglected because he and respondent tested positive for marijuana at his birth. On 21 November 2012, WCHS filed a juvenile petition alleging that the three boys were neglected juveniles. The court conducted a hearing on 14 March 2013 and adjudicated the boys as neglected.

The court's findings of fact indicate that during the investigation of the report received in March 2012, WCHS learned that respondent was pregnant and without stable housing and employment. Because of her pregnancy, respondent was not taking medication she had been prescribed for anxiety, depression and bi-polar disorder. She was leaving the children with her family members while she was at times sleeping in a car during nights.

From 22 May 2012 to 6 June 2012, the whereabouts of respondent were unknown. On 7 June 2012, a service plan was developed which included provisions for housing, employment, substance abuse assessment, mental health services, medication management, and a safety resource plan for the children. Respondent agreed to place the children with a "safety resource

person" in South Carolina and not to remove the children from this placement without first contacting WCHS.

On 18 June 2012, WCHS received a report concerning the birth of Don and his testing positive for marijuana. WCHS met with respondent at the hospital and entered into a safety agreement with respondent in which she agreed to place Don with a safety resource person. Respondent selected a maternal cousin to be the safety resource person.

WCHS was unable to locate respondent from 19 to 25 June 2012, when WCHS was able to meet with respondent and her maternal cousin at the agency. WCHS attempted to set up services to assist respondent but respondent could not be located after this meeting until late July 2012.

On 20 July 2012, WCHS learned that respondent had removed Jay and Jon from their safety resource placement and placed them with their maternal great aunt without seeking prior approval from WCHS. Respondent met with WCHS on 25 July 2012 and discussed her service plan. WCHS attempted to implement the service plan but respondent failed to maintain contact with the agency. From 5 September 2012 through 3 October 2012, WCHS did not know respondent's whereabouts and neither safety resource

placement could provide sufficient information to enable WCHS to locate respondent.

WCHS met with respondent on 3 October 2012 and discussed respondent's lack of progress in complying with the service plan. Respondent informed WCHS that she intended to move with Don to Franklin County. WCHS approved the move to Franklin County. Respondent and Don moved into the home on 10 October 2012 but moved out on 19 October 2012. WCHS first learned that respondent and Don had moved when it attempted to contact respondent at this home on 24 October 2012. Respondent informed WCHS on 31 October 2012 that she intended to move to Harnett County. Respondent refused to tell WCHS where she and Don were located or provide information about the child.

The court also found that during the time WCHS was involved in the case, respondent had not complied with services, and had not maintained contact with WCHS or provided money, food, clothing, or other necessities to care for her children. Respondent had not attended any of the children's medical appointments. Jay and Jon both needed physical examinations and vaccinations. Jay had severe tooth decay. Don had not received any medical care since his release from the hospital after his birth.

After not having contact from respondent since 7 November 2012, WCHS filed a juvenile petition on 21 November 2012 alleging the children were neglected and dependent juveniles. At the time of the adjudication hearing, respondent was incarcerated. According to a court report incorporated by reference into the court's order, respondent was arrested on 11 February 2013 and charged with murder. She was denied bail at her first court appearance on 12 February 2013.

Respondent informed the court during the adjudication hearing that from July to November 2012, she gave money to the maternal great aunt for the care of the children although she was not able to do it every month. She also stated she moved out of the Franklin County home because it was infested with roaches and bugs. She conceded that she did not notify WCHS of her move. She also acknowledged that she moved to Harnett County in order to avoid WCHS and that she failed to inform WCHS of her whereabouts because she was afraid WCHS would come and take her baby from her. She also confessed that she avoided taking telephone calls from the social worker. She stated that she did not visit her older children because she was told by the social worker that she could not visit them. She also told the

court that she does not desire visitations with the children while she is incarcerated.

Based upon these findings, the court concluded that the three children are neglected juveniles as defined by N.C. Gen. Stat. § 7B-101(15) in that the children do not receive proper care and supervision from their parents and live in an environment injurious to their welfare. The court ordered that the children remain in the legal custody of WCHS. Respondent filed notice of appeal on 15 May 2013.

"The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2011). In reviewing an order adjudicating a child as neglected, this Court determines (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the conclusions of law are supported by the findings of fact. *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000). Our review of a conclusion of law is *de novo*. *In re D.H.,* 177 N.C. App. 700, 703, 629 S.E.2d 920, 922 (2006). Under a *de novo* standard of review, we can consider a conclusion of law anew and freely substitute our judgment for that of the trial court. *In re A.K.D.*, ___ N.C. App. ___, ___, 745 S.E.2d 7, 8 (2013). The

determination of whether a child is neglected requires the application of legal principles to a set of facts and is therefore a conclusion of law. *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675-76 (1997).

Respondent contends certain findings of fact are not actually findings of fact but recitations of evidence, and thus do not constitute proper findings of fact which can support the court's conclusions of law and adjudication. An order must contain findings as to "the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached." *In re Anderson,* 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (citation omitted). "Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." *Appalachian Poster Advertising Co. v. Harrington*, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988) (citation omitted). Findings of fact "should resolve the material disputed issues, or if the trial court does not find that there was sufficient credible evidence to resolve an issue, should so state." *Carpenter v. Carpenter*, ___ N.C. App. ___, ___, 737 S.E.2d 783, 790 (2013) (citation omitted).

We have examined the findings of fact which respondent claims are recitations of evidence. It is true that the court used language such as respondent "told the Court" or "stated" certain statements within these findings of fact. However, these findings challenged by respondent only comprise seven of the court's forty findings of fact. Moreover, the statements contained within these seven findings of fact do not materially conflict with the court's other findings of fact or concern a material disputed issue. As an example, in challenged finding number 11, the court found that respondent "told the Court" that from July to November 2012, she remained in contact with her maternal aunt and provided the maternal aunt with money to care for the children but not every month. Also within finding of fact number 11, the court wrote that respondent "stated" she did not visit her two older children because the social worker told her she could not visit them. These findings or statements do not conflict with the court's findings that respondent did not provide money to WCHS for the support of her child and that respondent did not visit with the two older children. Many of the "recitations" of respondent's testimony concern acknowledgements by respondent as to the truth of claims made by WCHS.

Respondent next argues certain findings of fact are not supported by evidence. She argues there is no evidence that she has a history of substance abuse, that a child family team meeting was held on 3 October 2012, that the children were placed by WCHS in the various homes, that her children's medical needs were not being met, and that she was non-compliant with services offered by WCHS because these services were not offered or provided.

The trial judge's findings of fact are binding "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery,* 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984) (citations omitted). Findings of fact are also binding if the appellant does not challenge them on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Erroneous findings of fact will not result in reversible error if they are unnecessary to the court's ultimate adjudication. *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).

We find ample evidence to support the findings. The maternal great aunt with whom the two older boys were placed testified that from July 2012 through November 2012, respondent visited her sons only on three occasions. When the boys came

into her care, they had not had physical examinations or their vaccinations. She voluntarily took the boys into her home when she learned that respondent mother was at risk of losing them. She took the boys for medical and dental care after they came into her care. WCHS provided paperwork she needed to obtain medical treatment for the boys. Respondent did not accompany her to any medical or dental visits.

The court report which was received into evidence and incorporated by reference into the court's order indicates that the youngest child was born testing positive for marijuana and that respondent tested positive for the presence of "cannabises" on 10 January 2013. The putative father of the youngest child testified that respondent told him about a case plan she had with WCHS which included "parenting classes, hum, cleaning her system far as marijuana and stuff like that." Respondent testified and did not say anything to dispute the report that she and the baby tested positive for marijuana at his birth. The court report shows that the maternal great aunt took the youngest child for vaccinations and treatment for wheezing after he was removed from respondent's care.

Respondent also contends the findings of fact do not support the conclusion of law that the children are neglected

juveniles. A juvenile is neglected if he is not receiving proper care, supervision, or discipline from a parent or guardian, is not being provided necessary medical or remedial care, or is residing in an environment injurious to the juvenile's welfare. N.C. Gen. Stat. § 7B-101(15) (2011). "Where the evidence shows that a parent has failed or is unable to adequately provide for his child's physical and economic needs, whether it be by reason of mental infirmity or by reason of willful conduct on the part of the parent, and it appears that the parent will not or is not able to correct those inadequate conditions within a reasonable time, the court may appropriately conclude that the child is neglected." *In re Montgomery,* 311 N.C. at 109, 316 S.E.2d at 252.

Respondent argues the court erred by failing to make findings showing there is a substantial risk of harm to the children in the home or establishing any nexus between her alleged lack of care and supervision of the children and any actual physical, mental, or emotional impairment of the children. *See In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (stating "this Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such

impairment as a consequence of" a parent's neglect). We do not agree. We have held that a court's failure to make an express finding of fact that the child has sustained, or is at risk of sustaining, some physical, mental, or emotional harm as a result of the neglect does not warrant remand if all of the evidence supports this finding. *Id.* at 753, 436 S.E.2d at 902. We have also stated that when a child has been placed with a relative prior to adjudication, the care previously provided by the parent is a consideration in determining whether the child is neglected or likely to be neglected if the child is returned to the parent's care. *In re K.J.D.*, 203 N.C. App. 653, 657-61, 692 S.E.2d 437, 441-44 (2010). Factors we have considered relevant to this determination include: the parent's inability to provide for the child's physical and economic needs; the parent's failure to comply with case plans directed toward correcting the conditions which led to the kinship placement; the parent's inability to maintain stable housing and employment; the parent's failure to show concern, parental love, and affection by not visiting, calling, or mailing letters or cards to the child; and the parent's failure to make her whereabouts known, to stay in constant contact with the county department of social services, and to avail herself of services

offered by the county department of social services.  *See id.*, *In re K.D.*, 178 N.C. App. 322, 329, 631 S.E.2d 150, 155 (2006); *In re J.L.K.*, 165 N.C. App. 311, 318-19, 598 S.E.2d 387, 392 (2004); *In re Helms*, 127 N.C. App. at 511, 491 S.E.2d at 676; *In re Evans*, 81 N.C. App. 449, 452, 344 S.E.2d 325, 327 (1986).

We conclude the findings of fact support the court's conclusion that the juveniles were neglected.  The findings reflect that respondent has not provided for their health and economic needs, has not maintained stable housing or employment, has not been cooperative with WCHS, has not complied with case plans, has not made her whereabouts known to WCHS and the maternal great aunt for weeks at a time, and has not regularly visited and shown love and affection to the two older children. The children thus have not received proper care and supervision from their parent.

We affirm the order.

Affirmed.

Judges MCGEE and DILLON concur.

Report per Rule 30(e).