An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1113
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

IN RE:

G.A.A.                                    New Hanover County
                                          No. 12 JT 171


Appeal by Respondent from order entered 11 July 2013 by Judge Jeffrey E. Noecker in New Hanover County District Court. Heard in the Court of Appeals 27 February 2014.

*No brief for Petitioners.*

*Ryan McKaig for Respondent.*

*No brief for Guardian ad Litem.*


STEPHENS, Judge.


*Factual and Procedural Background*

Respondent appeals from the order terminating his parental rights to the minor child G.A.A. ("George").[1]  We reverse.

---

[1] The parties stipulated to the use of this pseudonym in order to protect the identity of the juvenile.

George was born out-of-wedlock to petitioners' daughter[2] in October 2010. As a result of his mother's drug use, George was undersized, hypotonic, and developmentally delayed. He experienced severe difficulties with feeding, "oral tactile defensiveness and aversion[,]" "moderately severe" acid reflux, and a sensory processing disorder known as Self Regulation Disorder. Because of this disorder, George requires an environment that is extremely stable and predictable. At the time of the termination hearing, George was two and one-half years old and had attained the developmental level of a twelve-month-old.

Petitioners are George's maternal grandparents who have provided a home for George and served as his primary caretakers since his birth. Petitioner-grandmother is a pediatric nurse. In addition to his multiple treatment providers, petitioners employ a full-time nanny experienced with special-needs children to care for George while they are at work.

Respondent was not listed as George's father on the birth certificate but established his paternity through genetic testing in a child custody proceeding he initiated against

---

[2] George's mother was named as a respondent in the petition to terminate parental rights, but according to the termination order, is now deceased, and thus not a party to this appeal.

George's mother in New Hanover County District Court. Petitioners intervened in the custody proceeding and were awarded sole legal and physical custody of George by order entered 5 January 2012, *nunc pro tunc* to 31 October 2011. The custody order includes a finding by the district court that Respondent "acted inconsistently with his constitutionally protected status" as George's father, as evidenced by his lack of contact with, and failure to provide support for, George in his first year of life. Respondent was not determined to be George's legal father until entry of the 5 January 2012 custody order.

When George was born, Respondent was living in Pennsylvania, but he relocated in April 2012 to Wilmington and then Myrtle Beach, South Carolina in order to be closer to George.[3] On 8 May 2012, Respondent was arrested and charged with four offenses involving allegations of domestic violence against his then-girlfriend. Respondent spent 120 days in jail before

---

[3] Respondent testified he initially "came down to Wilmington and then to Myrtle Beach[,]" but claimed he "couldn't find housing in Wilmington, where I intended to be for my son." He stayed briefly at a campground in Wilmington before moving to South Carolina.

being released on bond in September 2012.[4]  On 30 September 2012, he was arrested and charged with breach of the peace.

Petitioners filed a petition to terminate Respondent's parental rights on 28 June 2012.  The district court heard testimony from petitioners, Respondent, and a social worker from the New Hanover County Department of Social Services, as well as George's pediatrician, occupational therapist, physical therapist, speech pathologist, and nanny.  Based on the evidence, the court concluded that grounds existed for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (2) (failure to make reasonable progress), and (7) (abandonment).[5]  The court further concluded that George's best interests would be served by terminating Respondent's parental rights.  Respondent gave timely notice of appeal from the order.

---

[4]  The 8 May 2012 charges were pending at the time of the termination hearing.

[5]  The district court made a finding of fact that the petition alleged grounds existed under subsections (1), (2), (4) (willful failure to pay reasonable support), and (6) (dependency) of N.C. Gen. Stat. § 7B-1111(a) (2013).  However, the petition does also allege that Respondent "willfully abandoned [George] for at least six [] consecutive months" prior to the petition's filing, the ground for termination set forth in subsection (7).  *See* N.C. Gen. Stat. § 7B-1111(a)(7).  We also note that the termination order consistently cites the termination statute as "N.C.G.S. § 7B-111."

*Discussion*

Respondent argues that the district court erred in finding that grounds for termination existed pursuant to section 7B-1111(a)(1) (neglect), (2) (failure to make reasonable progress), (6) (dependency), and (7) (abandonment) and erred in concluding that termination was in the best interests of George.  We agree.

We review an order terminating parental rights to determine whether the district court's findings of fact are supported by clear, cogent, and convincing evidence and whether the conclusions of law are supported by the findings of fact.  *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, *disc. review denied*, 358 N.C. 543, 599 S.E.2d 42 (2004).  Conclusions of law are reviewed *de novo*.  *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *affirmed per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009).

*I. Neglect*

Respondent first argues that the district court erred in finding that grounds existed to terminate his parental rights based upon his neglect of George.  We agree.

Under section 7B-1111(a)(1), "[t]he trial court may terminate the parental rights to a child upon a finding that the parent has neglected the child."  *In re Humphrey*, 156 N.C. App.

533, 540, 577 S.E.2d 421, 427 (2003) (citation omitted).  A "neglected" juvenile is defined, *inter alia*, as one "who does not receive proper care, supervision, or discipline from the juvenile's parent, . . .; or who has been abandoned; . . . or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]"  N.C. Gen. Stat. § 7B-101(15) (2013).  "In addition, this Court has required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline in order to adjudicate a juvenile neglected."  *In re E.P.*, 183 N.C. App. 301, 307, 645 S.E.2d 772, 775 (citation and internal quotation marks omitted), *affirmed per curiam*, 362 N.C. 82, 653 S.E.2d 143 (2007).

   "A finding of neglect sufficient to terminate parental rights *must be based on evidence showing neglect at the time of the termination proceeding*."  *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted; emphasis added).  Thus, if a child is in the custody of his parent at the time of the termination proceeding, such a determination is made by examining the parent's care of the child at that time.  However, when, as is frequently the case in termination proceedings, the

child has been removed from his parent's custody long before the termination proceeding, courts must "employ a different kind of analysis to determine whether the evidence supports a finding of neglect." *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003).

> [A] prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect. However, such prior adjudication, standing alone, will not suffice where the natural parents have not had custody for a significant period prior to the termination hearing. Therefore, the court must take into consideration any evidence of changed conditions in light of the evidence of prior neglect and *the probability of a repetition of neglect.*

*In re Brim*, 139 N.C. App. 733, 742, 535 S.E.2d 367, 372 (2000) (citation and internal quotation marks omitted; alteration and emphasis in original). In such cases, "a showing of *a history of neglect by the parent* and the probability of a *repetition* of neglect" is sufficient to establish grounds for termination under section 7B-1111(a)(1). *In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (citation and internal quotation marks omitted; emphasis added).

Thus, in situations where the child has been removed from the parent, the court considers the parent's *past* neglect of the

child and whether the current circumstances suggest the neglect probably will *reoccur* in the future. However, while a "probability of a *repetition* of neglect" can constitute a ground for termination, *id.*, "parental rights may not be terminated for threatened future harm" in the absence of any previous neglect. *In re Evans*, 81 N.C. App. 449, 452, 344 S.E.2d 325, 327 (1986); *see also In re Phifer*, 67 N.C. App. 16, 25-26, 312 S.E.2d 684, 689 (1984) (rejecting the petitioner's "strenuous[] conten[tion] that a threat of future harm is sufficient grounds for termination of parental rights").[6]

Here, George has never been adjudicated a neglected juvenile as defined in section 7B-101(15). The custody order does not contain any findings that Respondent neglected George in the past. Respondent has never had custody of George, and George has never lived with Respondent. Instead, George has

---

[6] Under the Juvenile Code then in effect, a neglected child was defined as one who "does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State Law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law." N.C. Gen. Stat. § 7A-517(21) (1981). This language is virtually identical to that in current section 7B-101(15) and nothing suggests the relevant reasoning employed in *In re Phifer* would be inapplicable to determinations of neglect under section 7B-101(15).

lived with petitioners from birth, with the exception of a few brief periods when it appears his mother (petitioners' daughter) left petitioners' home and took George with her.[7] The termination order contains no findings of fact regarding any "physical, mental, or emotional impairment of" George due to the actions or omissions of Respondent. *In re E.P.*, 183 N.C. App. at 307, 645 S.E.2d at 775.

In support of its adjudication of neglect under N.C. Gen. Stat. § 7B-1111(a)(1), the district court made the following findings of fact:

> 11. The minor child was placed in the care and custody of [p]etitioners by prior court order and Respondent was found to have acted inconsistently with his constitutionally protected status as a parent of the minor child at issue herein. Respondent was also found to be unfit to provide for the care and custody of the minor child at the time of the custody order noted herein above dated January 5, 2012.
>
> 12. Based on the findings of fact herein and pursuant to [section] 7B-111[1] et[] seq., grounds exist to terminate the parental rights of Respondent to the minor child as follows:

---

[7] The record does not reveal the exact details of these occasions, but the termination order notes that George had lived with petitioners for more than two of his two and one-half years of life at the time of the proceeding and nothing in the record suggests that George ever resided with Respondent.

. . .

(c) In accordance with [section] 7B-111[1](a)(1)[,] (2), Respondent neglected the juvenile in numerous ways, including but not limited to:

. . .

iii. Respondent is incapable of providing for the proper care and supervision [of the child] and the child *would live* in an injurious environment if in [] Respondent's care such that the juvenile is a neglected juvenile within the meaning of [section] 7B-101, and there is a reasonable probability that such incapability will continue for the foreseeable future.

. . .

v. Through evidence of his past behavior and current behavior, Respondent's actions detail that he has largely untreated mental health issues including major depression, post-traumatic stress disorder, anger management issues, and tendencies towards aggressive and violent behavior. Although Respondent has been in therapeutic counseling for the past eight months, which began after his most recent incarceration, he is not taking medications previously prescribed to assist him in the management of these illnesses.

vi. From the date of the minor child's birth, through the time that the Petition was filed, Respondent

made one payment of $50.00 and sent gifts in the form of clothing and Christmas gifts to [p]etitioners for the child. Respondent has never paid for any of the minor child's specialized medical needs.

vii.  Respondent has prior allegations of domestic violence against the mother of the minor child, which he was later found not guilty of at trial.  After moving to Myrtle Beach the police were called to a gas station due to a conflict between Respondent and his then girlfriend. . . .

viii.  Shortly after the incident at the gas station . . . , Respondent had another incident with the same girlfriend . . . .  From said incident, Respondent has current pending criminal charges of Kidnapping, Pointing and Presenting Firearms at a Person, Possession of a Weapon During a Violent Crime, and Criminal Domestic Violence of a High and Aggravated Nature.  One of the allegations against him was that he pointed a loaded weapon at the head of his girlfriend at the time and law enforcement noticed marks on her neck, which Respondent believes she inflicted on herself.

ix.  Once released from incarceration on the above noted charges, Respondent was arrested again for disturbing the peace in Myrtle Beach.

x.  In addition to the current pending

charges, Respondent's criminal record over the past number of years includes multiple charges for which he either plead[ed] guilty or was found guilty which include violent offenses and illegal substance charges. . . .

xi. Respondent has suffered significant residential instability. . . .

xii. While in South Carolina, Respondent lived in no less than six (6) separate residences, generally renting on a week[-]to[-]week basis. He rarely stayed in any rental for a month, often . . . reporting problems with neighbors or landlords. Respondent slept on a bench in a church playground for . . . one night after release from incarceration.

xiii. Respondent suffers from relationship instability. . . .

xiv. The conditions in Respondent's life all combine so that he did not make reasonable progress towards correcting his circumstances. . . .

xv. *Although [R]espondent has not had placement of the minor child, due to his residence instability, untreated mental health, incarcerations, and violent altercations, had the minor child been with him, it is presumed the child would have been neglected. Respondent's instability, violence, and other conditions*

noted herein would likely have led to G[eorge] not receiving proper care, supervision, or having his needs adequately met.

xvi. All the findings are overlain by the substantial nature of the minor child's medical issues. G[eorge] is a fragile child with excessive special needs, requiring daily and intensive special needs which Respondent cannot meet and has not made any reasonable efforts to be able to meet, despite having knowledge of the child's special needs from [p]etitioners.

xvii. Respondent asserted that due to his criminal allegations, he is not in a position to have custody of the minor child at this time. However, he stated that he believes with additional time he could.

xviii. Respondent has attended a significant number of counseling sessions, has attended physical therapy sessions, and has recently started sessions with a parenting counselor. The Court finds that despite those efforts, Respondent has not shown reasonable progress to fix the conditions which caused the court to determine that he acted contrary to his constitutionally protected status as a parent in the underlying custody matter.

. . .

xx. . . . . Respondent did not take

> the opportunities that he was offered [to visit George]. . . . Prior to the filing of the Petition, Respondent had only attended three (3) visitation times with the minor child.
>
> xxi. Respondent could have requested additional visitation during the time noted herein . . . until [p]etitioners ceased any and all visitation between Respondent and the minor child due to the Respondent's pending criminal allegations. Respondent indicated to the Court that it was not practical to travel to North Carolina from Pennsylvania for short four[-]hour visit[s], nor [was it] financially feasible.

(Emphasis added). The court further found "a high probability of *repetition of neglect* of the minor child, if the minor child were in the care of the Respondent[,]" even though there was no finding of any prior neglect.

These findings of fact are insufficient to support a determination of neglect as a ground for termination of Respondent's parental rights to George.[8] As shown in the emphasized portions of the order quoted *supra*, the court found only a "presumed" *hypothetical* risk that George would have been

---

[8] These findings would perhaps support the conclusion that grounds for termination of Respondent's parental rights existed based upon George's dependency pursuant to section 7B-1111(a)(6). This ground for termination is addressed in section III below.

neglected if he had been in Respondent's care and, on the basis of that hypothetical risk, the trial court then presumed a future risk of neglect. Thus, both the evidence and the district court's findings of fact are insufficient to establish neglect as a ground for termination under N.C. Gen. Stat. § 7B-1111(a)(1). *See In re Evans*, 81 N.C. App. at 452, 344 S.E.2d at 327 (holding that "parental rights may not be terminated for threatened future harm" in the absence of any previous neglect).

*II. Failure to make reasonable progress*

Respondent next argues that the district court erred in finding that grounds existed to terminate his parental rights under subsection (2), to wit, that Respondent "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). Again, we agree.

"Where the 'more than twelve months' threshold requirement in [section] 7B-1111(a)(2) did not expire before the motion or petition was filed, a termination on this basis cannot be sustained. Indeed, this threshold requirement is related to the

court's jurisdiction or authority to act." *In re A.C.F.*, 176 N.C. App. 520, 527, 626 S.E.2d 729, 735 (2006) (citation and footnote omitted). This Court also specified that the twelve-month period does not begin to run until after "a court has entered a court order requiring that a child be in foster care or other placement outside the home." *Id.* at 525-26, 626 S.E.2d at 734 (emphasis omitted).

Here, the order giving custody of George to petitioners was entered 3 January 2012, *nunc pro tunc* to 31 October 2011. Petitioners filed the petition to terminate Respondent's parental rights on 28 June 2012. Thus, twelve months had not elapsed between entry of the custody order and the filing of the petition for termination. Accordingly, termination of Respondent's parental rights on the basis of subsection (2) cannot be sustained.

*III. Dependency*

Respondent also argues that the district court erred in terminating his parental rights based upon George's dependency.

Subsection (6) provides that a ground for termination of parental rights exists when

> the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [section] 7B-

> 101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-1111(a)(6). In turn, section 7B-101 defines a dependent juvenile as "[a] juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9).

As noted in footnote 8 *supra*, portions of findings of fact 11 and 12(c) *could* support the conclusion that a ground to terminate parental rights existed under section 7B-1111(a)(6) because George was a dependent child as defined in section 7B-101(9). However, finding of fact 12(b) explicitly states that, "[i]n accordance with [section 7B-1111](a)(6), [p]etitioners *did not meet their burden*." (Emphasis added). This is tantamount to a finding that no clear, cogent, and convincing evidence was

offered to support a conclusion that George was a dependent child.

Further, the termination order does *not* conclude that dependency exists as a basis to terminate Respondent's parental rights. Rather, conclusion of law 4 merely states that "Respondent is incapable of providing for the proper care and supervision of [George] while in his care so that [George] is a dependent juvenile within the meaning of [section] 7B-101." In contrast, conclusions of law 3 and 5 each begin, "Pursuant to [section] 7B-111[1] et[] seq., grounds exist to terminate the parental rights of . . . Respondent" before going on to state the grounds of neglect, abandonment, and failure to make reasonable progress. This distinction, in combination with the explicit statement in finding of fact 12(b), suggests that the district court did not intend to conclude that dependency could serve as a ground for the termination of Respondent's parental rights to George. Even if we were to interpret conclusion of law 4 as referring to dependency as a ground for termination of parental rights, in light of finding of fact 12(b), we cannot hold that this conclusion of law is supported by the findings of fact as they appear in the order. *In re Shepard*, 162 N.C. App. at 221, 591 S.E.2d at 6.

*IV. Abandonment*

Respondent also argues that the district court erred in finding that grounds existed to terminate his parental rights based upon his abandonment of George.  We agree.

Parental rights may be terminated when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition . . . ." N.C. Gen. Stat. § 7B-1111(a)(7).  "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child."  *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (citation omitted).  Willfulness is "more than an intention to do a thing; there must also be purpose and deliberation."  *Id.* (citation omitted).

> A judicial determination that a parent willfully abandoned h[is] child, particularly when we are considering a relatively short six[-]month period, *needs to show more than a failure of the parent to live up to h[is] obligations as a parent in an appropriate fashion; the findings must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child*.

*In re S.R.G.*, 195 N.C. App. 79, 87, 671 S.E.2d 47, 53 (2009) (citation omitted; emphasis added).

Here, our task is complicated due to the lack of dates in many of the findings of fact in the termination order which discuss Respondent's actions relevant to assessing his desire to remain George's father. However, the unchallenged findings of fact reveal the following: Up until seven months before the petition was filed, Respondent was engaged in the custody action which he initiated and which certainly indicates a strong desire to maintain his parental rights. After George's birth, Respondent moved from Pennsylvania to live closer to George, established paternity, made at least one support payment, and sent clothing and other gifts to George. Respondent acknowledged that his pending criminal allegations prevented him from having custody of George, but expressed hope that he could regain custody in the future. Respondent "attended a significant number of counseling sessions" and parenting sessions. Indeed, the district court found that "Respondent has expressed a desire and a demand to visit and maintain rights to contact [George]. He has appeared in court and asserted his rights." We simply do not believe that Respondent's "actions are wholly inconsistent with a desire to maintain custody of" George. *See In re S.R.G.*, 195 N.C. App. at 87, 671 S.E.2d at 53. The district court's own findings of fact summarized *supra*

do not support its ultimate finding that Respondent abandoned George.

*V. Termination of parental rights*

Because none of the grounds for termination found by the district court are supported by the findings of fact, we need not address Respondent's argument that the district court erred in concluding that it would be in George's best interests to terminate Respondent's parental rights.

*Conclusion*

The district court's findings of fact are not supported by clear, cogent, and convincing evidence and do not support its conclusions of law. *See In re Shepard*, 162 N.C. App. at 221, 591 S.E.2d at 6. Accordingly, the termination order is

REVERSED.

Judges CALABRIA and ELMORE concur.

Report per Rule 30(e).