IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-68

No. 261A21

Filed 17 June 2022

IN THE MATTER OF: B.F.N. and C.L.N.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from orders entered on 18 May 2021 by Judge William B. Sutton Jr. in District Court, Sampson County. This matter was calendared for argument in the Supreme Court on 13 May 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Gregory T. Griffin for petitioner-appellant mother.*

*Jeffrey L. Miller for respondent-appellee father.*

HUDSON, Justice.

¶ 1   Petitioner, the mother of C.L.N. (Chip)[1] and B.F.N. (Brad) (collectively, the children), appeals from the trial court's orders denying her petitions to terminate the parental rights of respondent, the children's biological father. Because trial court's findings of fact do not permit meaningful appellate review and are thus insufficient to support the denial of the termination petitions, we vacate the trial court's orders and remand for further proceedings.

## I.  Factual and Procedural Background

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities and for ease of reading

¶ 2    Petitioner and respondent were married in 2003. Chip was born in 2007, and Brad was born in 2012. The parties divorced in 2015.

¶ 3    On 9 March 2015, a domestic violence protective order (DVPO) was issued against respondent. The trial court found that in March 2015, respondent had placed petitioner in fear of imminent serious bodily injury by threatening to harm her and causing property damage. The trial court concluded that respondent had committed acts of domestic violence against petitioner and that there was a danger of serious and immediate injury to petitioner. Pursuant to the DVPO, respondent was prohibited from assaulting, threatening, abusing, following, harassing, or interfering with petitioner; prohibited from threatening a member of petitioner's family or household; ordered to stay away from petitioner's residence or any place where petitioner receives temporary shelter; ordered to stay away from petitioner's work and "any place [petitioner] may be found"; and prohibited from possessing, receiving, or purchasing a firearm. The terms of the DVPO were in effect until 9 March 2016.

¶ 4    On 12 March 2015, petitioner and respondent entered into a "Confession of Judgment." They agreed that petitioner would have primary custody of the children. Respondent would have secondary joint custody of the children and visitation with the children every first and third weekend of the month and select holidays.

¶ 5    On 21 October 2017, respondent physically assaulted petitioner at a restaurant while the children were present. As a result of the incident, criminal charges were

brought against respondent, and on 7 December 2017, respondent was found guilty of assault on a female.

¶ 6 On 11 December 2017, another DVPO was entered against respondent. The trial court found that on 21 October 2017, respondent had intentionally caused serious bodily injury to petitioner by "attacking and assaulting" petitioner. Pursuant to the DVPO, respondent was prohibited from assaulting, threatening, abusing, following, harassing, or interfering with petitioner; prohibited from assaulting, threatening, abusing, following, harassing, or interfering with children residing with or in the custody of petitioner; prohibited from threatening a member of petitioner's family or household; ordered to stay away from petitioner's residence or any place petitioner receives temporary shelter; ordered to stay away from petitioner's work, the children's school or any place where the children receive day care, and "any other place where [petitioner] is located." Respondent was also ordered to make payments to petitioner for support of the children; prohibited from possessing, receiving, or purchasing a firearm; ordered to surrender firearms, ammunition, and gun permits; and ordered to attend and complete an abuser treatment program. The terms of the order were effective until 11 December 2018. Additionally, temporary custody of the children was granted to petitioner.

¶ 7 On 21 December 2017, the trial court entered an order finding that the children were exposed to a substantial risk of emotional injury caused by respondent, the

children were present during acts of domestic violence perpetrated by respondent against petitioner, and respondent had acted in a manner that was not in the best interests of the children and was inconsistent with his constitutional rights as a natural parent. The trial court concluded that respondent was not a fit and proper person to exercise any custody or visitation with the children and that it was in the best interests of the children that petitioner have exclusive custody of them. Accordingly, petitioner was granted the exclusive care, custody, and control of the children, and respondent's rights of secondary joint custody and visitation were terminated.

¶ 8          Respondent was ordered to "remain away" and "not to go around" the children and petitioner, including but not limited to "any place where they may be whether at home, school, church, in any public or private place"; ordered to leave any premises "wherever they may be present"; and prohibited from making "any contact in person and/or by an agent directly or indirectly." Respondent was ordered not to have any contact with petitioner or the children "pending further orders of th[e] court and only upon a motion in the cause being filed by [respondent] alleging that a substantial change of circumstances has occurred and no sooner can such motion be filed then until after one (1) year from the entry of this order." As a condition precedent to respondent filing such a motion, the trial court ordered him to obtain a substance abuse and alcohol assessment and complete all recommended treatment; undergo a

psychological examination and attend any recommended counseling; complete at least three consecutive alcohol and drug screens at least one month apart prior to filing any motion; complete certified parenting classes; complete domestic violence prevention classes; and complete an anger management assessment and all recommended treatment and counseling sessions.

¶ 9    On 14 March 2019, the trial court entered an order holding respondent-father in contempt for violating its 21 December 2017 order. The trial court found that respondent had violated the 21 December 2017 order by sending petitioner text messages on 14, 15, and 21 December 2018 requesting to see the children and going to Chip's school and attempting see him on 11 January 2019. The trial court ordered respondent to serve thirty days in the Sampson County Jail. All but one twenty-four-hour period of this sentence was suspended. The 21 December 2017 order remained in effect.

¶ 10    On 10 July 2020, petitioner filed petitions to terminate respondent's parental rights in the children. Petitioner alleged, *inter alia*, that respondent had for a period greater than two years preceding the filing of the petitions willfully failed without justification to pay for the care, support, and education of the children; respondent had "abandoned and neglected" the children and "ha[d] not made any inquiry about the wellbeing" of the children in over two years; and respondent had willfully

abandoned the children for at least six months immediately preceding the filing of the petitions.

¶ 11      On 21 July 2020, respondent filed a motion for modification of child custody seeking joint legal and physical custody of the children. Alternatively, respondent sought "substantial visitation" with the children. On 19 October 2020, respondent filed an answer to the termination petitions, denying many of the allegations.

¶ 12      Following a hearing on 18 March 2021, the trial court entered orders on 18 May 2021 finding that there was "insufficient evidence for th[e] [c]ourt to conclude that grounds exist to terminate the parental rights of the Respondent" and denying the petitions to terminate respondent's parental rights.[2] Petitioner timely appealed to this Court.

## II.      Analysis

¶ 13      On appeal, petitioner challenges the trial court's conclusion that grounds did not exist to terminate respondent's parental rights in the children. Specifically, she argues the trial court erred in concluding that respondent did not willfully abandon or neglect the children.[3]  Based on the reasons stated herein, we hold that the trial

---

[2] Although the trial court entered separate orders denying the petitions to terminate respondent's parental rights in the children, the findings of fact and conclusions of law are identical.
[3] Petitioner does not argue on appeal that the evidence supported the termination of respondent's parental rights under N.C.G.S. § 7B-1111(a)(4), as she alleged in the petitions.

court's findings of fact do not permit meaningful appellate review and are thus insufficient to support the trial court's denial of the termination petitions.

¶ 14        Subsection § 7B-1109(e) provides that the trial court "shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in [N.C.]G.S. [§] 7B-1111 which authorize the termination of parental rights of the respondent." N.C.G.S. § 7B-1109(e) (2021). The burden of proof is upon the petitioner and "all findings of fact shall be based on clear, cogent, and convincing evidence." N.C.G.S. § 7B-1109(f) (2021).

¶ 15        "Should the court determine that circumstances authorizing termination of parental rights do not exist, the court shall dismiss the petition or deny the motion, *making appropriate findings of fact and conclusions [of law].*" N.C.G.S. § 7B-1110(c) (2021) (emphasis added). The trial court is under a duty to "find the facts specially and state separately its conclusions of law thereon, regardless of whether the court is granting or denying a petition to terminate parental rights." *In re K.R.C.*, 374 N.C. 849, 857 (2020) (cleaned up).

> Compliance with the fact-finding requirements of N.C.G.S. §§ 7B-1109(e) and -1110(c) is critical because [e]ffective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot

> be determined on appeal whether the trial court correctly
> exercised its function to find the facts and apply the law
> thereto.

*Id*. at 858 (alteration in original) (quoting *Quick v. Quick*, 305 N.C. 446, 458 (1982)).

¶ 16        In her first argument, petitioner asserts the trial court erred in determining that "there is insufficient evidence . . . to conclude [respondent] willfully abandoned [the children] due to his actions to improve himself and the clear prohibitions set forth in the [21 December 2017] order" because respondent "could not use the 2017 Order as a complete shield." She contends that respondent had no contact with the children and failed to provide any financial or emotional support for the children since 2017. Petitioner also claims that respondent failed to fully comply with the requirements of the 21 December 2017 order by refusing to participate in counseling sessions.

¶ 17        Termination of parental rights under N.C.G.S. § 7B-1111(a)(7) requires proof that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7) (2021). As used in subsection 7B-1111(a)(7), abandonment requires a "purposeful, deliberate and manifest willful determination to forego all parental duties and relinquish all parental claims to [the child]." *In re A.G.D.*, 374 N.C. 317, 319 (2020) (alteration in original) (quoting *In re N.D.A.*, 373 N.C. 71, 79 (2019)). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial

affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501 (1962). The willful intent element "is an integral part of abandonment" and is determined according to the evidence before the trial court. *Id.* "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. at 77 (quoting *In re D.E.M.*, 257 N.C. App. 618, 619 (2018)).

¶ 18        Because the termination petitions were filed on 10 July 2020, the determinative six-month period in the present case is from 10 January 2020 to 10 July 2020. The trial court concluded that there was insufficient evidence to establish that respondent willfully abandoned the children "due to his actions to improve himself and the clear prohibitions set forth in the [21 December 2017] order."[4] However, outside the finding that he had been employed "since approximately 2012," the remaining findings detailing respondent's "actions to improve himself" refer to

---

[4] Although the trial court labeled this as a finding of fact, a determination that respondent did not willfully abandon the children is a conclusion of law, involving the application of legal principles. *See State v. Sparks*, 362 N.C. 181, 185 (2008) ("[A]ny determination requiring . . . the application of legal principles is more properly classified [as] a conclusion of law." (quoting *In re Helms*, 127 N.C. App. 505, 510 (1997))). "[F]indings of fact [which] are essentially conclusions of law . . . will be treated as such on appeal[,]" and we will treat them as such in our review of the instant matter. *Id.* (second and third alterations in original) (quoting *Harris v. Harris*, 51 N.C. App. 103, 107, *disc. rev. denied*, 303 N.C. 180 (1981)).

events that occurred outside the relevant six-month period. For instance, the trial court found respondent completed a psychological evaluation in November 2019, an anger management and batterer intervention program in August 2018, outpatient substance abuse counseling in October 2019, and parenting classes in July 2019, but none of these efforts transpired during the determinative six-month period. "The inadequacy of the trial court's findings is further displayed by its failure to identify 'the determinative six-month period' governing its abandonment inquiry." *In re K.R.C.*, 374 N.C. at 861 (quoting *In re C.B.C.*, 373 N.C. 16, 23 (2019)).

¶ 19      Moreover, the trial court's findings regarding the limitations of the 21 December 2017 order on respondent's efforts are insufficient to support a determination that he did not willfully abandon the children. The trial court found that the 21 December 2017 order terminated respondent's rights to secondary joint custody and visitation with the children, ordered him to "to remain away from the minor children and [petitioner] and not go around them wherever [petitioner] or the minor children shall be located[,]" and prohibited him "from making any contact in person and/or by an agent directly or indirectly." However, respondent was free to seek modification of the order by alleging a substantial change in circumstances any time after 21 December 2018.

¶ 20      As a condition precedent to the court considering any motion in the cause filed by respondent, respondent was ordered to obtain a substance abuse and alcohol

assessment and complete any recommended treatment, complete a psychological examination and attend any recommended counseling, complete three consecutive alcohol and drug screens at least one month apart, complete domestic violence prevention classes, and complete an anger management assessment and any recommended treatment and counseling. As previously noted, the trial court made findings that respondent complied with many of these requirements. Nonetheless, the court's findings fail to address whether respondent had the ability to seek modification of the 21 December 2017 order during the six-month determinative period. Respondent's ability or inability to seek modification of the 21 December 2017 order during this period would be relevant in determining the willfulness of his acts or omissions. *See In re E.H.P.*, 372 N.C. 388, 394 (2019) (rejecting an argument that a no-contact provision in a temporary custody judgment prevented the respondent from contacting his children during the relevant six-month period when the respondent made no attempt to modify the terms of the temporary custody judgment which was "by definition provisional, and . . . expressly contemplated the possibility that the no-contact provision would be modified in a future order"); *In re I.R.M.B.*, 377 N.C. 64, 2021-NCSC-27, ¶ 19 (rejecting an argument that a restraining order precluded contact with the respondent's child during the determinative six-month period where the respondent was aware of his ability to seek legal custody and visitation rights and how to obtain such relief despite the limitations of the order but

failed to do so). Likewise, the trial court's findings fail to address other indications that respondent sought to fulfill his parental duties during the applicable six-month period.

¶ 21 In her second argument, petitioner argues that the trial court erred in determining "there is insufficient evidence to suggest either current neglect or a likelihood of future neglect" by respondent and argues that this Court is unable to conduct meaningful appellate review when the trial court's findings are insufficient to demonstrate it considered terminating respondent's parental rights based upon neglect by abandonment.

¶ 22 According to N.C.G.S. § 7B-1111(a)(1), a trial court is entitled to terminate a parent's parental rights in a child on the basis of neglect if that child's "parent, guardian, custodian, or caretaker . . . [d]oes not provide proper care, supervision, or discipline[;] [h]as abandoned the juvenile[;] . . . [or c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2021). "In determining whether a parent's parental rights in a child are subject to termination on the basis of neglect, the parent's fitness to care for his or her child must be determined as of the date of the termination hearing, an event that is frequently held after the child has been removed from the parent's custody." *In re D.T.H.*, 378 N.C. 576, 2021-NCSC-106, ¶ 19. In that scenario, "[t]he trial court must consider evidence of changed conditions . . . in light of the history of neglect by the

parents and the probability of a repetition of neglect." *In re Ballard*, 311 N.C. 708, 714 (1984) (quoting *In re Wardship of Bender*, 170 Ind. App. 274, 285, 352 N.E.2d 797, 804 (1976)). "On the other hand, however, this Court has recognized that the neglect ground can support termination without use of the two-part *Ballard* test if a parent is presently neglecting their child by abandonment." *In re D.T.H.*, ¶ 19 (cleaned up).

¶ 23        A trial court has the authority to terminate a parent's parental rights in a child for neglect based upon abandonment in the event the trial court finds that the parent's conduct demonstrates a "willful neglect and refusal to perform the natural and legal obligations of parental care and support." *Pratt*, 257 N.C. at 501. In order to terminate parental rights on this ground, "the trial court must make findings that the parent has engaged in conduct which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child as of the time of the termination hearing." *In re N.D.A.*, 373 N.C. at 81 (cleaned up). In determining whether a parent has neglected his or her child by abandonment for purposes of N.C.G.S. § 7B-1111(a)(1), the relevant time period "is not limited to the six consecutive months immediately preceding the filing of the termination petition." *Id.* at 81. "[A] trial court may consider a parent's conduct over the course of a more extended period of time . . . ." *Id.* at 81–82 (citations omitted).

¶ 24    In the orders denying the termination petitions, the trial court found that respondent had been in a relationship with his fiancée who testified about the absence of domestic violence and incidents of shouting and anger by respondent; respondent had a good relationship with his fiancé's children; respondent had never been physically violent toward Chip or Brad; respondent had taken steps to improve himself, including completing parenting, domestic violence, and substance abuse classes; and there was no evidence respondent had engaged in any violent crimes or dangerous behaviors since the 2017 incident involving petitioner. Ultimately, the trial court determined that

> while the incident of domestic violence towards [petitioner] at the Bojangles in the presence of the [children] and other acts that occurred prior to the December 21, 2017 Order support a finding of neglect by [respondent], there is insufficient evidence to suggest either current neglect or a likelihood of future neglect by [respondent].

¶ 25    However, despite allegations that respondent had "abandoned and neglected" the children and "ha[d] not made any inquiry about the wellbeing" of the children in over two years, the trial court's findings fail to offer an assessment regarding the issue of whether respondent neglected the children by abandonment. This Court has previously held that "when the trial court denies a petition at the adjudicatory stage pursuant to N.C.G.S. § 7B-1110(c), the order must allow for appellate review of the trial court's evaluation of *each and every* ground for termination alleged by the petitioner." *In re K.R.C.*, 374 N.C. at 864. Without findings addressing whether

respondent's acts or omissions amounted to "wil[l]ful neglect and refusal to perform the natural and legal obligations of parental care and support[,]" *Pratt*, 257 N.C. at 501, this Court is precluded from conducting meaningful appellate review on this ground.

### III.   Conclusion

For the reasons set forth above, we hold that the trial court's findings of fact are insufficient to support its denial of petitioner's termination-of-parental-rights petitions. As a result, we vacate the trial court's 18 May 2021 orders and remand the matter to the trial court for entry of additional findings of fact and conclusions of law. On remand, we leave to the discretion of the trial court whether to hear additional evidence. *See, e.g.*, *In re K.R.C.*, 374 N.C. at 865.

VACATED AND REMANDED.