An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-42

Filed 2 July 2025

Mecklenburg County, Nos. 24JA000062-590, 24JA000063-590, 24JA000064-590, 24JA000065-590

IN THE MATTER OF: O.J., G.J., B.J., E.J.

Appeal by respondent-father from orders entered 10 July 2024 and 13 August 2024 by Judge Faith Fickling-Alvarez in Mecklenburg County District Court. Heard in the Court of Appeals 12 June 2025.

> *Robinson & Lawing, LLP, by Christopher M. Watford, for respondent-appellant father.*
>
> *Senior Associate County Attorney Kristina A. Graham, for petitioner-appellee Mecklenburg County Youth and Family Services.*
>
> *Administrative Office of the Courts, by GAL Appellate Counsel Matthew D. Wunsche, for appellee guardian ad litem.*

FLOOD, Judge.

Respondent-Father appeals from the trial court's initial adjudication and disposition orders, which adjudicated O.J. ("Oakland"), G.J. ("Gabby"), B.J. ("Billy"),

and E.J. ("Ellie") (collectively, the "minor children")[1] to be neglected and dependent juveniles. On appeal, Respondent-Father argues the trial court erred in concluding the minor children are dependent juveniles under N.C.G.S. § 7B-101(9), where "the trial court failed to make a proper finding [] Respondent-Father was incapable of providing care[.]" Upon review, we conclude the trial court did not err in adjudicating the minor children to be dependent juveniles, because the unchallenged findings of fact demonstrate Respondent-Father was incapable of providing care or supervision for the minor children, and offered no appropriate alternative child care arrangement. We therefore affirm the trial court's orders.

## I. **Factual and Procedural Background**

Respondent-Father and Respondent-Mother[2] (collectively "Respondent-Parents") are the biological parents of the minor children. Oakland was born in February 2023, Gabby in December 2018, Billy in April 2020, and Ellie in March 2022. Respondent-Mother served as the primary caretaker of the minor children, and Respondent-Father frequently left the home to work out-of-state.

On 25 April 2023, Mecklenburg County Division of Youth and Family Services ("YFS") became involved with the family when it received a report by Child Protective Services ("CPS") alleging sexual abuse of Gabby and neglect of the minor children. The social worker visited the home and observed: Gabby was "unclean, wearing dirty

---

[1] Pseudonyms are used to protect the juveniles' identities, pursuant to N.C.R. App. P. 42(b).
[2] Respondent-Mother is not a party to this appeal.

clothing, and not well groomed"; the diapers of Gabby, Billy, and Ellie were "extremely soiled with feces and urine"; the minor children were non-verbal; Oakland had "a breakdown of skin"; Billy walked in and out of the home alone; and Gabby would "go into the bathroom and take a bath alone[.]" Respondent-Mother informed the social worker that she would lock the minor children in their rooms to discipline them, and Billy would bang his head against the door until Respondent-Mother let him out.

The YFS investigation further revealed: prior domestic violence between Respondent-Parents in South Carolina, which resulted in a 2020 CPS case; the minor children lacked routine medical care; the minor children were behind on immunizations; Respondent-Parents failed to ensure Gabby—who was hearing impaired since birth—was wearing her hearings aids, because they could not find the hearing aids; and Gabby had not been taught sign language, and was unable to verbally communicate. As a result of the investigation, the social worker developed a safety plan for Respondent-Parents. On 4 May 2023, during a subsequent home visit by the social worker, Respondent-Mother informed YFS: she had obtained Medicaid and scheduled physicals for the minor children; and Gabby, Billy, and Ellie "had all been connected with Child Language and Development for speech therapy." On 22 June 2023, the "case was unsubstantiated for sexual abuse and closed[.]"

On 22 February 2024, YFS received a report by CPS alleging physical abuse of Oakland, who appeared at the Atrium Health Cabarrus Emergency Department with

"severe dehydration and an unexplained left shoulder fracture." Oakland appeared "lethargic, small for her age[,]" and "frail and dehydrated[,]" and she had an increased heart rate. Respondent-Mother reported that Oakland experienced diarrhea for six days, was taking fewer bottles, and appeared to be losing weight. Respondent-Mother also reported that Oakland was not current on her immunizations, and had not had a "well-child check" with her pediatrician since her four-month visit. Oakland was subsequently transferred to Levine Children's Hospital. At the hospital, Oakland: was found to have "a very low weight for a one-year-old"; had not transitioned to solid foods, where "children transition to some solid foods after [six] months"; was observed to display rocking and head-banging behaviors in her crib; and did not speak any words. Gabby, Billy, and Ellie were also observed to rock back and forth at the hospital, "none of the [minor] children" spoke, and they were all behind on their well-child checks.

The Davidson Police Department subsequently conducted a criminal investigation due to Oakland's injury and concerns of child neglect. Officers visited the home and observed: two large holes in Billy's bedroom wall, which Respondent-Mother reported resulted from Billy banging his head; dark stains on the carpet that Respondent-Mother confirmed were feces stains due to the minor children having accidents; Oakland's bassinet had a hole in the mesh covering, which Respondent-Mother explained was a hole cut by Billy when he got hold of a large machete from the closet; and the bassinet was covered with a comforter, with no openings for air

flow, so as to prevent Oakland from climbing out. Respondent-Father informed officers that the closet from which the machete was taken also contained a rifle that was unsecured without a gun lock or other safety mechanisms. The officers further observed: the minor children were "running around the house" without supervision; they were unable to communicate verbally; and they left the house without shoes or coats when "it was [forty-eight] degrees outside[,]" and played in the dirt with "a bottle of chemical wood cleaner." Additionally, Gabby was not wearing hearings aids, and when Respondent-Father produced the hearing aids at the officers' request, they were broken, and "[i]t did not appear that [Respondent-Father] knew how to insert them[.]"

On 29 February 2024, Oakland was ready to be discharged from the hospital, but YFS considered it unsafe to discharge Oakland to Respondent-Parents' home, and Respondent-Parents offered no alternative placement for the minor children. On 1 March 2024, YFS filed petitions alleging the minor children were neglected and dependent juveniles, and obtained nonsecure custody of the minor children that same day. On 8 March 2024, the trial court held a nonsecure custody hearing and ordered the minor children to remain in nonsecure custody of YFS. The trial court thereafter held adjudication hearings on 7 May, 8 May, 5 June, and 14 June 2024. The trial court heard testimony from YFS and the officers, and made findings of facts that detailed the previously described events.

On 10 July 2024, the trial court entered an order adjudicating the minor children to be neglected and dependent juveniles. On 13 August 2024, the trial court entered a disposition order and retained the minor children in YFS custody. Respondent-Father timely appealed from both orders.

## II. **Jurisdiction**

This Court has jurisdiction to review the disposition order and the adjudication order upon which it is based pursuant to N.C.G.S. §§ 7A-27(b)(2) and 7B-1001(a)(3) (2023).

## III. **Standard of Review**

We review a trial court's adjudication under N.C.G.S. § 7B-807 (2023) "to determine whether the trial court's findings of fact are supported by clear and convincing competent evidence and whether the court's findings support its conclusions of law." *In re K.L.*, 272 N.C. App. 30, 36 (2020) (citation and internal quotation marks omitted). Where "the trial court's findings of fact [are] supported by clear and convincing competent evidence[,]" they "are deemed conclusive, even where some evidence supports contrary findings." *In re Helms*, 127 N.C. App. 505, 511 (1997). Further, "[f]indings of fact unchallenged by the appellant are binding on appeal." *In re K.L.*, 272 N.C. App. at 36 (citation and internal quotation marks omitted). "Whether a child is abused or neglected is a conclusion of law, and we review a trial court's conclusions of law de novo." *Id.* at 36 (internal citations omitted). "Under a de novo review, th[is C]ourt considers the matter anew and freely

substitutes its own judgment for that of the lower tribunal." *In re S.W.*, 914 S.E.2d 457, 461 (N.C. Ct. App. 2025) (citation omitted).

## IV. <u>Analysis</u>

On appeal, Respondent-Father argues the trial court erred in concluding the minor children are dependent juveniles under N.C.G.S. § 7B-101(9), where "the trial court failed to make a proper finding [] Respondent-Father was incapable of providing care[.]" We disagree.

A dependent juvenile is defined as:

> A juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.

N.C.G.S. § 7B-101(9) (2023). "In determining whether a juvenile is dependent, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re A.W.*, 377 N.C. 238, 249 (2021) (citation and internal quotation marks omitted). "[A] child is not dependent so long as there is one parent who can either care for the child or make appropriate alternative child[ ]care arrangements for the child." *In re J.N.J.*, 286 N.C. App. 599, 615 (2022).

In *In re W.C.T.*, DSS filed petitions alleging the children—Wade, Wes, and Wren—were dependent juveniles, and the trial court later adjudicated the children,

in relevant part, dependent juveniles. 280 N.C. App. 17, 26 (2021). On appeal, the mother argued "there was no evidence in the record or findings of fact made by the trial court to demonstrate her inability to care for the children." *Id.* at 38. This Court concluded that the unchallenged findings of fact were sufficient to support a conclusion that the children were dependent juveniles, where the findings of fact demonstrated the following:

> (1) [The parents'] lack of care and supervision over the children led to Wade's injury; (2) [the parents] were unable to provide [DSS] with an alternative plan of care for the children after the temporary placement with the maternal grandparents' neighbors ended; (3) [the parents] failed to meet Wes' educational needs; and (4) [the parents] failed to meet the children's medical needs.

*Id.* at 42.

Here, Respondent-Father challenges none of the findings of fact on appeal, and thus, they are binding on this Court. *See In re K.L.*, 272 N.C. App. at 36. The trial court made, in relevant part, the following, unchallenged findings of fact:

> 9. . . . .
> f. [Billy] was wandering off, running around the [hospital] room, jumping off the hospital bed, and hitting his siblings, all in the presence of [Respondent-P]arents and without either [Respondent-P]arent doing anything to address his behaviors until the doctor or social worker asked [Respondent-P]arents to do so.
>
> 10. . . . .
> a. [Oakland] had diarrhea for [six] days before [Respondent-]Mother took her to the pediatrician. [Respondent-]Father was discontent that [Respondent-

]Mother took [Oakland] to the doctor and wanted her to wait longer.

. . . .

e. [Respondent-]Mother denied any recent traumas or injuries, and then reported that [Oakland] could have fallen out of her bassinet[] because [Billy] made hole in the bassinet[], and that [Oakland] had been climbing out of the bassinet[] recently through the hole created by [Billy].

. . . .

h. . . . [Oakland] appear[ed] developmentally delayed for her age due to her not pulling to stand, not babbling or using words, and making minimal eye contact.

. . . .

m. [Oakland] . . . had gross motor delays and social delays, demonstrated by poor ability to pull to stand, lack of eye contact, self-soothing and self-injurious behaviors often demonstrated in children who experience lack of affectionate touch.

n. . . . . [Respondent-]Mother and [Respondent-]Father reported [Oakland] could have been injured falling out of her bassinet[] through hole cut by [Billy], or when [Gabby] picks [Oakland] up like a baby doll.

o. . . . . As [Oakland's] only caregivers, [Respondent-P]arents would have observed the[] types of symptoms [associated with a child clavicle fracture], however, they never sought emergency or regular medical treatment for this for [Oakland].

. . . .

t. . . . .

i. [Respondent-P]arents demonstrated a pattern of failing to provide necessary medical appointments for [Gabby] in that she needed to see specialists such as an ENT and a cardiologist shortly after her birth, and multiple doctor appointments her first year of life. [Respondent-]Father attributed [Gabby's] poor weight gain because they missed [Gabby's] feedings due to oversleeping.

. . . .

iii. [Gabby] has not been able to hear or speak or communicate due to [Respondent-P]arents' lack of medical treatment for [Gabby].

. . . .

z. Only [Respondent-]Mother and [Respondent-]Father provided direct care for the [minor] children, except when [Gabby] was at school.

. . . .

ii. [Respondent-Parents] kept an unsecured rifle stored in a closet and an unsheathed machete on the floor under a clothing wardrobe.

jj. [Billy] cut a hole in [Oakland's] bassinet[] with the machete a couple months prior to February 2024 while [Oakland] was in the bassinet[], and this resulted in [Oakland] being able to climb/fall out more than once previously. [Respondent-Parents] knew about [Oakland] climbing/falling out of the bassinet[] and did not provide a safe remedy.

kk. . . . . [Respondent-P]arents were unaware that [placing a comforter over the bassinet] was safety risk to [Oakland].

. . . .

11. . . . .

a. None of these [minor] children could speak or understand sign language.

b. [Gabby] had a hearing impairment for which she was not provided services or hearing aids.

c. [Billy] and [Ellie] had speech delays for which they were not receiving regular, adequate recommended services.

d. [Oakland] had developmental delays for which she was not receiving services.

e. All of the [minor] children were engaging in self-injurious, self-soothing behaviors.

> f. None of the [minor] children were regularly being seen or evaluated by a doctor or getting immunizations.
> . . . .
> n. [Respondent-P]arents offered/had no appropriate alternative placement for the [minor] children.

The unchallenged findings of fact amply demonstrate that Respondent-Father was incapable of providing care to the minor children. *See* N.C.G.S. § 7B-101(9). Just as in *In re W.C.T.*, where the unchallenged findings of fact demonstrated that the parents' lack of care and supervision over the children led to the injury of one of the children, the parents failed to meet the medical or educational needs of the children, and the parents were unable to provide an alternative placement, so here do the unchallenged findings of fact demonstrate Respondent-Father was unable to provide care or supervision for the minor children. 280 N.C. App. at 42. The unchallenged findings of fact demonstrate Respondent-Father, in relevant part: failed to properly supervise or care for Oakland prior to her shoulder injury by failing to address the possible causes of her injury; failed to meet Oakland's medical needs by "wanting to wait longer" to bring Oakland to the hospital, and never seeking medical treatment for her shoulder fracture; failed to bring Gabby to needed medical appointments with a specialist; failed to address Gabby's hearing needs; failed to ensure the minor children visited the doctor regularly or kept up-to-date on their vaccinations; and demonstrated an unfamiliarity with the health risks to Oakland of having a comforter placed over her bassinet.

The unchallenged findings of fact further demonstrate Respondent-Father failed to meet not just the educational needs, but also the emotional and developmental needs, of the minor children by failing to: ensure the minor children met developmental milestones; meet their language skills needs, where the minor children were nonverbal, and Gabby and Ellie were not receiving recommended services to address their speech delays; offer appropriate affection, resulting in the minor children's self-soothing and self-injurious behaviors; and intervene to address Billy's problematic behaviors at the hospital. Finally, the unchallenged findings of fact demonstrate Respondent-Parents were the only caregivers of the minor children, and that Respondent-Parents offered no alternative placement for the minor children.

The trial court's unchallenged findings of fact demonstrate that Respondent-Father failed to provide proper care of supervision of the minor children, which supports the conclusion that the minor children are dependent juveniles. *See* N.C.G.S. § 7B-101(9); *In re A.W.*, 377 N.C. at 249; *see also In re W.C.T.*, 280 N.C. App. at 42. Accordingly, because the unchallenged findings of fact demonstrate that Respondent-Father was incapable of providing care or supervision for the minor children, and offered no appropriate alternative child care arrangement, the trial court did not err in adjudicating the minor children to be dependent juveniles. *See In re A.W.*, 377 N.C. at 249; *see also* N.C.G.S. § 7B-101(9). We therefore affirm the trial court's orders.

## V. <u>Conclusion</u>

Upon review, we conclude the trial court did not err in adjudicating the minor children to be dependent juveniles, because the unchallenged findings of fact demonstrate Respondent-Father was incapable of providing care or supervision for the minor children, and there was no appropriate alternative child care arrangement. We therefore affirm the trial court's orders.

AFFIRMED.

Judges ARROWOOD and WOOD concur.

Report per Rule 30(e).