An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-63

Filed 5 November 2025

Mecklenburg County, No. 21CR204481-590

STATE OF NORTH CAROLINA

v.

EUGENE DEKINO GATLING, Defendant.

Appeal by Defendant from order entered 8 January 2024 by Judge Bradley B. Letts and judgment entered 12 March 2024 by Judge Donald R. Cureton in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 September 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Sherri Horner Lawrence, for the State.*
>
> *Andrew Nelson for Defendant.*

GRIFFIN, Judge.

Defendant Eugene Dekino Gatling appeals from the trial court's judgments after a jury convicted him of one felony and one misdemeanor. Defendant contends the trial court erred by denying his motion in limine and by not arresting judgment on his sexual battery conviction. We hold the trial court did not err; however, we

remand for correction of the clerical error resulting from the failure to arrest judgment on the sexual battery conviction.

## I. Factual and Procedural Background

On 13 January 2021, T.M. visited the Hand & Stone massage and facial spa in Charlotte. There, T.M. was led to a room by Defendant, who was her massage therapist for that session. After T.M. had completely undressed, Defendant entered the room where T.M. was lying on the table covered by a sheet, and he began to massage her shoulders. T.M. then flipped over, with the right side of her body exposed and left side of her body covered by a sheet and fell asleep during the massage.

T.M. testified that while she was falling asleep, she believed she felt a touch on her breast. She then testified that when she woke up, she felt Defendant's fingers going in and out of her vagina, and Defendant asked T.M. if he could "taste" her. T.M. then confronted Defendant, at which point Defendant apologized and offered T.M. an additional hour massage. T.M. asked Defendant to leave the room, and Defendant left the room. T.M. felt a burning sensation in her vagina and used the sheet to wipe her vagina.

T.M. then reported the inappropriate touching to Hand & Stone's receptionist, who called the manager regarding T.M.'s report. The receptionist testified that after she called the manager, Defendant told her that during the massage his hand had

slipped. T.M. spoke with the Hand & Stone manager and called the police, to whom she gave a statement. That same day, T.M. went to the emergency room where vaginal swabs and sexual assault kit evidence were collected, which, in addition to the vaginal swabs, contained T.M.'s buccal standard, vaginal smear slide, external genitalia swabs, left-hand fingernails swabs, and right-hand fingernails swabs. On 17 July 2023, Defendant was indicted on one count of second-degree forcible sexual offense and one count of sexual battery.

Shannin Guy, a criminalist and DNA analyst for the Charlotte Mecklenburg Police Department Crime Laboratory, received this evidence for analysis and testified on behalf of the State. Defendant filed a motion in limine to exclude DNA evidence and testimony from his trial.

On 3 January 2024, the trial court held a motion hearing on the motion in limine before impaneling a jury. Defendant did not object to Ms. Guy's admission as an expert witness in DNA analysis. Regarding the standards of the CMPD Crime Lab, Ms. Guy testified that every four years the CMPD Crime Lab "goes through an external assessment process where an external team is brought in, and each discipline is assessed against a set of standards that are common in the fields." In addition, "the DNA section is required every other year to be assessed against the quality assurance standards by the FBI." Further, "[o]n the opposite years that the external assessments are not being completed, the DNA section is required to internally assess, according to the quality assurance standards, to maintain

accreditation" from the American National Accreditation Board. Additionally, Ms. Guy testified that she is required to complete proficiency tests twice a year "that are provided by an external vendor" as well as "qualifying and competency tests each time a new method or procedure is put in place." Ms. Guy then testified that she followed the widely accepted scientific process for analyzing DNA in this case.

Regarding the DNA analysis, Ms. Guy testified as to each step of the DNA analysis, testifying that she followed each of these steps in this case. She began by preparing and cleaning the area and utensils for the analysis and would not begin until everything was cleaned and prepped, all while wearing a facemask and gloves which she would change. Ms. Guy testified that she would only open one uniquely labeled tube of DNA sample at a time "to decrease the possibility of contamination." She began her analysis with extraction, "putting a series of chemicals onto the item, whether it be a swab or a cutting, and the purpose of that is to break open the cells to get the DNA into the solution, and then to purify it, which means get rid of all of the extraneous things that may interfere with downstream reactions." Ms. Guy had obtained DNA profiles from both Defendant's and T.M.'s buccal standards.

Ms. Guy then quantitated the vaginal swabs, external genitalia swabs, and both fingernail swabs—estimating the total amount of DNA that is present in the sample. Due to insufficient detection of male DNA from the quantitation of the vaginal swabs, external genitalia, and left-hand fingernails, Ms. Guy did not proceed to the amplification of the DNA—making copies of the DNA based on whether it is

likely to get a usable profile for comparison. Ms. Guy testified the amount of male DNA detected for the vaginal swabs was .0005 nanograms per microliter; the amount of male DNA for the external genitalia swabs detected was .0001 nanograms per microliter; and the amount detected of male DNA for the left-hand fingernail swabs was .0004 nanograms per microliter. The CMPD Crime Lab's DNA threshold for amplification is greater than .001 nanograms per microliter. Thus, Ms. Guy was unable to make an identification.

Ms. Guy testified that it was possible that the quantitation of nanograms per microliter could be a result of contamination, a separate encounter, or a reliable reading. However, Ms. Guy testified that she did not report any contamination regarding the DNA evidence in this case.

The trial court orally denied Defendant's motion in limine and then issued a written order denying the motion in limine. The jury found Defendant guilty of second degree forcible sexual offense and sexual battery. During sentencing, the trial court stated it would "arrest judgment in the sexual battery charge, or conviction," but the 12 March 2024 written judgment still included the sexual battery conviction.

Defendant timely appealed.

## II.  Analysis

Defendant contends the trial court erred by denying his motion in limine and by not arresting judgment on his sexual battery conviction. We disagree the trial court erred by denying Defendant's motion in limine but agree the trial court erred

by not arresting judgment on his sexual battery conviction.

Defendant first argues the trial court made multiple erroneous findings of fact in its order denying Defendant's motion in limine. Defendant specifically argues that Findings of Fact 26 and 27 were not supported by competent evidence.[1] The trial court found the following in pertinent part:

> 26. The expert testimony of Shannin Guy is relevant, based upon valid scientific evidence, Ms. Guy is a witness qualified as an expert in DNA analysis, the testimony will assist the trier of fact, the DNA analysis was conducted by the proper standards of DNA testing in 2021 through the present, and the testimony is reliable.

> 27. The evidence of DNA analysis pursuant to Rule 403 is relevant. After conducting the balancing test under Rule 403 the unfair prejudice is minimal and is not substantially outweighed by the probative value of the DNA testing and analysis by Ms. Guy.

Defendant argues that the standard by which we should review the findings of fact at issue is competent evidence, citing *State v. Tripp*, 381 N.C. 617, 625, 873 S.E.2d 298, 305 (2022). But these two Findings of Fact are not questions of fact because they exercise the judgment of the trial court in admitting evidence pursuant

---

[1] Although Defendant does not expressly state in his brief that the sole findings of fact being challenged are Findings of Fact 26 and 27, the only challenged findings of fact referenced in Defendant's brief come from Findings of Fact 26 and 27. Thus, we limit our review to those findings. *See State v. Tripp*, 381 N.C. 617, 625, 873 S.E.2d 298, 305 (2022) ("Findings of fact not challenged on appeal 'are deemed to be supported by competent evidence and are binding on appeal.'" (quoting *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011)).

to the applicable evidentiary rules.[2] The DNA evidence's reliability, basis upon valid scientific evidence, and assistance to the trier of fact are legal determinations made within the discretion of the trial court as they are components of the trial court's determination to admit the testimony pursuant to Rule 702.

Likewise, the remainder of the findings Defendant challenges are legal conclusions or discretionary judgments about the admission of evidence. Finding of Fact 26 is repeated in the trial court's Conclusion of Law 2, which was found analyzing Rules 402, 403, and 702, while Finding of Fact 27 was a discretionary judgment the trial court determined analyzing Rule 403 and is repeated verbatim as Conclusion of Law 4. Therefore, "[w]e review relevancy determinations by the trial court de novo before applying an abuse of discretion standard to any subsequent balancing done by the trial court." *State v. Triplett*, 368 N.C. 172, 175, 775 S.E.2d

---

[2] "We are obliged to apply the appropriate standard of review to a finding of fact or conclusion of law, regardless of the label which it is given by the trial court." *In re J.S.*, 374 N.C. 811, 818, 845 S.E.2d 66, 73 (2020) (citation omitted). "As a general rule, . . . any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law. Any determination reached through 'logical reasoning from the evidentiary facts' is more properly classified a finding of fact." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations omitted). However, although Rule 403 and Rule 702 decisions require courts' judgment and application of legal principles to findings of fact, decisions under Rules 403 and 702 are made within the discretion of the trial court. *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) ("Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." (citations omitted)); *State v. McGrady*, 368 N.C. 880, 890, 787 S.E.2d 1, 9 (2016) ("In each case, the trial court has discretion in determining how to address the three prongs of the reliability test. The trial court 'must have the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether* that expert's relevant testimony is reliable.'" (citations omitted)). Therefore, these decisions are reviewed for abuse of discretion, *State v. Richardson*, 385 N.C. 101, 132, 891 S.E.2d 132, 163 (2023) (applying abuse of discretion to Rule 403); *McGrady*, 368 N.C. at 893, 787 S.E.2d at 11 (applying abuse of discretion to Rule 702), not the de novo standard used for conclusions of law, *see Biber*, 365 N.C. at 168, 712 S.E.2d at 878.

805, 807 (2015) (citing *State v. Beckelheimer,* 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012)).

## A. Relevance

Turning first to the trial court's determination of relevance in Findings of Fact 26 and 27, Defendant challenges the trial court's determination of relevance under Rules 401 and 402. Although we review de novo, our Supreme Court "ha[s] also said that '[a] trial court's rulings on relevancy are technically not discretionary, though we accord them great deference on appeal.'" *Id.* (quoting *State v. Lane*, 365 N.C. 7, 27, 707 S.E.2d 210, 223 (2011)). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by the[ ] rules [of evidence]." N.C. R. Evid. 402. "In criminal cases, every circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *State v. Smith*, 357 N.C. 604, 613–14, 588 S.E.2d 453, 460 (2003) (citation modified).

Here, the DNA evidence referenced in the State's Motion to Suppress Exhibit 1 and Ms. Guy's testimony tended to make the existence of the fact that Defendant committed the sexual offense and battery during the massage session more or less

probable because the analysis showed traces of male DNA evidence from three DNA samples while showing no male DNA in one of the fingernail samples. This evidence, combined with Ms. Guy's testimony as to the insufficiency of the DNA's preventing amplification was relevant to the sexual criminal charges Defendant was facing because Defendant's charges required sexual contact or an act upon T.M. *See* N.C. Gen. Stat. § 14-27.33(a) (2021) ("A person is guilty of sexual battery if the person, for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person. . . ."); N.C. Gen. Stat. § 14-27.27(a) (2021) ("A person is guilty of second degree forcible sexual offense if the person engages in a sexual act with another person. . . .").

Therefore, the trial court did not err in finding the DNA evidence relevant.

## B. Probative Value

Defendant next argues the trial court's determination in Finding of Fact 27 that "unfair prejudice is minimal and is not substantially outweighed by the probative value of the DNA testing and analysis by Ms. Guy" is unsupported because there was no evidence supporting Ms. Guy's conclusion that the samples analyzed contained male DNA. We disagree.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." N.C. R. Evid. 403. We review for abuse of discretion. *Richardson*, 385 N.C. at 132, 891 S.E.2d at 163.

Here, while Ms. Guy could not say for certain whether the DNA was male or not, she confirmed during her testimony that the quantitation process she performed on the DNA evidence is designed to estimate the quantity of total DNA, and her quantitation found traces of male DNA. Although Ms. Guy acknowledged that error was possible with DNA analysis due to contamination, no contamination was reported in this case as stated in trial court's unchallenged Finding of Fact 22. Furthermore, Ms. Guy did not testify that the male DNA indicated in her analysis was specifically Defendant's DNA present on T.M. Ms. Guy only testified about her DNA analysis and its findings, which included traces of male DNA on samples from T.M. after she quantitated the evidence she received. As noted regarding the relevance analysis above, the DNA testing and analysis is probative to charges in this case as they indicated traces of male DNA present on T.M.'s body from evidence samples collected the same day as the events leading to the charges for which Defendant was being tried. *See* N.C. Gen. Stat. § 14-27.33(a); N.C. Gen. Stat. § 14-27.27(a). Although Defendant contends "Ms. Guy's work did not support her conclusion that the sample contained any 'male DNA,'" "[i]t was for the jury to decide what evidence was believable and what weight should be assigned." *State v. Lail*, 294 N.C. App. 206, 215, 903 S.E.2d 204, 210 (2024).

Therefore, the trial court did not abuse its discretion allowing this evidence.

## C. Admission of Expert Testimony

Defendant next argues the trial court abused its discretion by admitting Ms.

Guy's testimony and report.  We disagree.

Our Supreme Court has expressly addressed the trial court's broad authority and discretion in determining to admit expert testimony stating,

> Whether expert witness testimony is admissible under Rule 702(a) is a preliminary question that a trial judge decides pursuant to Rule 104(a).  In answering this preliminary question, the trial judge "is not bound by the rules of evidence except those with respect to privileges." To the extent that factual findings are necessary to answer this question, the trial judge acts as the trier of fact.  The court must find these facts by the greater weight of the evidence.  As with other findings of fact, these findings will be binding on appeal unless there is no evidence to support them.
>
> The trial court then concludes, based on these findings, whether the proffered expert testimony meets Rule 702(a)'s requirements of qualification, relevance, and reliability. This ruling "will not be reversed on appeal absent a showing of abuse of discretion."  And "[a] trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision."

*McGrady*, 368 N.C. at 892–93, 787 S.E.2d at 10–11 (internal citations omitted).  Thus, in line with our Supreme Court's decision in *McGrady*, we review the trial court's decision to include the expert testimony in this case for abuse of discretion.  *Id.*

Rule 702(a) states, in relevant part, that

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:

> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. R. Evid. 702(a) (2023).

In *McGrady*, our Supreme Court clarified that after a 2011 amendment to Rule 702, "North Carolina's Rule 702(a) now incorporates the standard from the *Daubert* line of cases," referring to the Supreme Court of the United States' decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *McGrady*, 368 N.C. at 888, 787 S.E.2d at 8. Our Supreme Court detailed the three steps by which Rule 702(a) allows admission of expert testimony. "First, the area of proposed testimony must be based on 'scientific, technical or other specialized knowledge' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* at 889, 787 S.E.2d at 8 (quoting N.C. R. Evid. 702(a)). "Second, the witness must be 'qualified as an expert by knowledge, skill, experience, training, or education.'" *Id.* at 889, 787 S.E.2d at 9. "Third, the testimony must meet the three-pronged reliability test that is new to the amended rule: '(1) The testimony [must be] based upon sufficient facts or data. (2) The testimony [must be] the product of reliable principles and methods. (3) The witness [must have] applied the principles and methods reliably to the facts of the case.'" *Id.* at 890, 787 S.E.2d at 9 (quoting N.C. R. Evid.

702(a)(1)–(3)) (alterations in original). "[E]xpert testimony must satisfy each [step] to be admissible." *Id.* at 889, 787 S.E.2d at 8. We address each step in turn.

First, we review whether the trial court abused its discretion in determining Ms. Guy's testimony and DNA analysis was based on "scientific, technical or other specialized knowledge" and "w[ould] assist the trier of fact to understand the evidence or to determine a fact in issue." "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—*i.e.,* 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 590. "In order to 'assist the trier of fact,' expert testimony must provide insight beyond the conclusions that jurors can readily draw from their ordinary experience." *McGrady,* 368 N.C. at 889, 787 S.E.2d at 8 (citation modified).

In this case, Ms. Guy testified about each step of her DNA analysis and that she used processes widely accepted within the scientific community when evaluating, inventorying, and analyzing the DNA evidence. This analysis, as Ms. Guy's lab report and testimony indicate, led to the detection of traces of male DNA on a portion of the DNA samples during quantitation, albeit insufficient amounts of male DNA to move on to the amplification step of the analysis. Ms. Guy testified that she could not say for certain that this was male DNA and there was the possibility of contamination in DNA analysis; however, she did not report any contamination to the DNA evidence in this case and never testified that it was not male DNA. Therefore, Ms. Guy's

testimony was based on scientific knowledge and was helpful to assist the triers of fact in understanding the DNA evidence in this case, in how her analysis transpired, how she reached her conclusions, and what an insufficient amount means in the context of the DNA analysis. Thus, we move to the next step.

Second, Ms. Guy must qualify as an expert. Neither party contests Ms. Guy's qualifications as an expert, and Defendant raised no objection to Ms. Guy's qualifications as an expert. Thus, the second step is satisfied.

Third, we look at the reliability of the expert under Rule 702(a)(1)-(3). In determining whether scientific testimony is reliable, our Supreme Court in *McGrady* looked to the following nonexhaustive factors from *Daubert*, not as a "definitive checklist or test" but as a "'flexible' inquiry:"

> (1) "whether a theory or technique . . . can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the theory or technique's "known or potential rate of error"; (4) "the existence and maintenance of standards controlling the technique's operation"; and (5) whether the theory or technique has achieved "general acceptance" in its field.

*McGrady*, 368 N.C. at 890–91, 787 S.E.2d at 9–10 (quoting *Daubert*, 509 U.S. at 593–94).

In sum, "[t]he primary focus of the inquiry is on the reliability of the witness's principles and methodology, not on the conclusions that they generate." *Id.* at 890, 787 S.E.2d at 9 (citations and quotation marks omitted). "However, 'conclusions and methodology are not entirely distinct from one another,' and when a trial court

'conclude[s] that there is simply too great an analytical gap between the data and the opinion proffered,' the court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *Id.* (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Defendant contends that this Court's decision in *State v. Phillips*, 268 N.C. App. 623, 836 S.E.2d 866 (2019), is applicable in this case. In *Phillips*, a forensic biologist with the North Carolina State Crime Lab testified at trial regarding evidence she tested for a DNA match. *Id.* at 627, 836 S.E.2d at 869–870. The DNA profile in that case was "inconclusive due to complexity and/or insufficient quality of recovered DNA." *Id.* at 627, 863 S.E.2d at 870. However, during trial, the State asked the forensic biologist to identify DNA information in a manner that the biologist described as "not scientifically accurate, so what I'm about to do, we do not do at the State Crime Lab, the FBI does not do it. No lab in this country, I'm assuming most labs in the world, do not do this because it's inconclusive." *Id.* at 629, 836 S.E.2d at 870. Thus, the Court ruled the expert testimony was not "based upon sufficient facts or data nor was the product of reliable principles and methods." *Id.* at 635, 836 S.E.2d at 874. Consequently, the expert testimony in that case was held to have been admitted by the trial court in violation of Rule 702(a). *Id.* at 636, 836 S.E.2d at 874–75.

Unlike the testimony in *Phillips*, here, Ms. Guy testified about her methods and processes. She confirmed these were the widely accepted scientific processes for

analyzing DNA. She also testified the CMPD Crime Lab goes through scheduled assessments by external teams to ensure the common scientific standards for each field are being followed, and she has to complete two proficiency tests a year as well as competency tests on new procedures. In addition, Ms. Guy testified the DNA section specifically receives evaluations by the FBI as well as internal quality assessments to maintain accreditation. No evidence nor testimony was provided suggesting Ms. Guy did not follow standard scientific procedure for her DNA analysis in this case. Rather, Ms. Guy testified she followed standard procedure in quantitating portions of the DNA evidence and did not proceed to the amplification stage of the analysis because the readings she received were below the CMPD Crime Lab's standard.

Even though the potential for contamination exists in any DNA analysis, Ms. Guy testified that she followed standard preparation and cleaning techniques, which included her wearing gloves and a face mask, cleaning the utensils used in the analysis, and only opening one tube containing samples at a time. She did not report any contamination in this case's evidence. Further, although Ms. Guy could not testify for certain that the DNA was male DNA, she testified that she followed the standard procedures in the quantitation stage of the analysis, which returned results of traces of male DNA. But regardless of the results of the analysis, the key is that Ms. Guy testified that she relied on widely accepted scientific procedures and methods in her DNA analysis. Thus, Ms. Guy's expert testimony analysis was

sufficiently reliable.

Therefore, the trial court did not abuse its discretion in denying Defendant's motion in limine and admitting Ms. Guy's expert testimony.

## D. Clerical Error

Defendant argues the trial court's judgment should be remanded for the correction of a clerical error in the trial court's 12 March 2024 written judgment. We agree. Since "[j]udgment is entered when sentence is pronounced," N.C. Gen. Stat. § 15A-101(4a) (2023), a clerical error exists when the written judgment does not mirror the judgment actually pronounced by the trial court in open court. *See State v. Lawing,* 12 N.C. App. 21, 23, 182 S.E.2d 10, 11–12 (1971); *State v. Brown,* 7 N.C. App. 372, 375, 172 S.E.2d 99, 101 (1970). Here, the trial court pronounced in open court that it was arresting judgment on the sexual battery charge during sentencing. However, the written judgment filed 12 March 2024 contained the sexual battery charge in contrast to what was pronounced in open court. Neither party denies the clerical error.

"When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record '"speak the truth."'" *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696–97 (2008) (quoting *State v. Linemann,* 135 N.C. App. 734, 738, 522 S.E.2d 781, 784 (1999)). Thus, we remand the matter to the trial court solely to correct the clerical error in the written judgment to conform it with the oral

pronouncement.

## III.   Conclusion

We hold there was no error in the trial court's decision to deny Defendant's motion in limine and admit the expert testimony.  The case is remanded to the trial court to correct the clerical error in the 12 March 2024 judgment.

NO ERROR; REMANDED.

Judges HAMPSON and WOOD concur.

Report per Rule 30(e).